[No. H028513. Sixth Dist. Apr. 26, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
ANTHONY WAYNE CARLIN, Defendant and Appellant.

## COUNSEL

J. Wilder Lee, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Eric D. Share and Ann P. Wathen, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**MIHARA, Acting P. J.**—On February 16, 2005, a jury found appellant Anthony Wayne Carlin to be a sexually violent predator (SVP) within the meaning of the Sexually Violent Predators Act (SVPA) (Welf. & Inst. Code, § 6600 et seq.).[1] The trial court committed appellant to the custody of the State Department of Mental Health for two years pursuant to the SVPA, section 6604. Appellant appeals from the court's order of commitment. He claims multiple violations of his due process rights, and challenges the sufficiency of the evidence, the adequacy of the jury instructions, the court's refusal to bifurcate the trial, and the constitutionality of the SVPA. We find a violation of due process arising from the People's reliance on hearsay evidence to prove predicate sexually violent offenses. We therefore reverse the order.

## I. Background

At the time of appellant's trial, to establish appellant as a sexually violent predator, the People were required to prove that appellant (1) had been convicted of sexually violent offenses against two or more victims; and (2) had a diagnosable mental disorder that made it likely he would engage in sexually violent conduct.[2] (Former § 6600, subd. (a)(1), as amended by Stats. 2000, ch. 643, § 1; *People v. Superior Court (Howard)* (1999) 70 Cal.App.4th 136, 151 [82 Cal.Rptr.2d 481] (*Howard*).) The definition of " '[s]exually violent offense' " included a conviction for a violation of Penal Code section 288, subdivision (a) (hereafter Penal Code section 288(a)), *if* (1) the offense was "committed by force, violence, duress, menace, fear of immediate and unlawful bodily injury on the victim or another person" (§ 6600, subd. (b)), *or* (2) "the offending act or acts involved substantial sexual conduct" and the victim is a child under the age of 14 (former § 6600.1, subd. (a), added by Stats. 1996, ch. 461, § 3, p. 2815).[3]

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise noted.

[2] On November 7, 2006, California voters approved Proposition 83, also known as Jessica's Law, which made substantive changes to the SVPA, effective November 8, 2006. For example, as amended, section 6600 requires that the People prove a sexually violent offense against only *one* or more victims. (§ 6600, subd. (a)(1); Prop. 83, § 24, approved by voters, Gen. Elec. (Nov. 7, 2006) eff. Nov. 8, 2006.) We apply the statute in effect at the time of appellant's trial in January 2005, but cite the current statute if the relevant language or provision was unaltered by Proposition 83.

[3] Proposition 83 broadened the category of convictions that constitute a sexually violent offense by omitting the section 6600.1 requirement that the offending act or acts involve substantial sexual conduct. The statute now reads: "If the victim of an underlying offense that is specified in subdivision (b) of Section 6600 is a child under the age of 14, the offense shall

On January 19, 2000, the People filed a petition alleging that appellant came within the provisions of the SVPA for involuntary commitment to the state hospital. The People's supporting declaration listed three prior convictions as sexually violent offenses under the SVPA. A trial was held in February 2001, but resulted in a mistrial due to a hung jury. Appellant's second trial commenced on January 18, 2005.

At trial, the prosecution relied on appellant's 1983, 1987 and 1991 Penal Code section 288(a) convictions to prove the predicate sexually violent offenses. The prosecution's expert testified that appellant has a pedophilic disorder, that appellant's sexual interests and urges persisted at the time of trial, and that appellant has a "medium high risk of committing new sexual offenses." Appellant's expert testified that appellant is not a pedophile, but is, instead, a situational offender. He concluded that appellant has no mental disorders, has self-control, and is at "very low risk" to reoffend. Appellant testified on his own behalf that he is not a pedophile and no longer has any interest in boys.

The jury found the petition true, and the trial court committed appellant to the custody of the State Department of Mental Health. Appellant filed a timely notice of appeal. He challenges the People's use of his 1987 and 1991 convictions as predicate offenses and focuses on the People's attempts to prove that the offenses underlying these convictions involved "substantial sexual conduct." Appellant does not contest the People's use of his 1983 conviction as a predicate offense.[4]

## II. Discussion

### A. 1987 Conviction

Appellant makes two related claims: (1) the People relied on facts other than appellant's conviction to show substantial sexual conduct in violation of his due process rights, and (2) there is insufficient evidence that the conviction involved substantial sexual conduct.

On May 5, 1987, appellant pleaded guilty to a violation of Penal Code section 288(a). According to probation and police reports introduced at trial, appellant was in charge of a weekend jet ski event in March 1987. Appellant hired Thomas H., a 12 year old, to run errands for the event. The night of

---

constitute a 'sexually violent offense' for purposes of Section 6600." (§ 6600.1; Prop. 83, § 25, approved by voters, Gen. Elec. (Nov. 7, 2006) eff. Nov. 8, 2006.)

[4] In August 1982, appellant met 11-year-old Matthew J. through Trail Blazers. During a camping trip with the group, appellant fondled Matthew's penis under his underwear. In 1983, appellant was convicted of a violation of Penal Code section 288(a) related to this incident.

March 21, Thomas's grandparents invited appellant and his son to spend the night in their recreational vehicle. (RV) with several other people. During the night, appellant told Thomas to get in bed with him so that Thomas would be warm. Thomas did and fell asleep. Around 5:00 a.m., Thomas awoke because he felt something heavy on his crotch. The blankets had been pushed down and his pants were unsnapped and unzipped. Appellant's hand was "grasping his crotch area," inside of Thomas's pants but on top of his underwear. Thomas tried to move appellant's hand and could not, so he eventually told appellant he had to use the bathroom and got out of bed. At trial, appellant testified that he put his left hand between Thomas's pants and underwear and rested it only on Thomas's inner thigh.

Andy T., 11 years old, also reported that appellant touched him in the RV that night. Appellant denied touching Andy and pleaded guilty to only one count of child molestation in regard to the March incidents. He was sentenced to three years in prison.

## 1. Identification of Act

Appellant objects to the prosecution's proof of a sexually violent offense involving Thomas, contending that "the record of conviction does not allow us to determine which act appellant was admitting when he pled guilty."

Two separate police reports recount the events that led to the 1987 complaint and conviction and both describe two offenses on March 22—one against Thomas and one against Andy. One of the reports, the supplemental police report, also references a separate incident of inappropriate touching between appellant and Thomas. The report states that about five weeks earlier, on February 14 or 15, 1987, appellant spent the night in Thomas's grandparents' RV and, at one point, "drap[ed] his hand over Thomas and allow[ed] it to lie limp over Thomas'[s] crotch." The felony complaint that led to the 1987 conviction[5] contains two identical counts alleging violations of Penal Code section 288(a). Both counts state, in relevant part: "[D]efendant(s) did, in the Livermore-Pleasanton Judicial District, County of Alameda, State of California, *on or about March 22, 1987*, commit a Felony, to wit: A violation of Section 288 (a) of the Penal Code of California, in that said defendant did then and there wilfully and lewdly commit a lewd and lascivious act upon and with the body and certain parts and members thereof

---

[5] The 1987 criminal complaint was discussed at trial and referred to as part of People's exhibit 2; however, it appears to have been inadvertently omitted from the documents received into evidence as part of the exhibit. The complaint is found in the appellate record as an exhibit to appellant's August 2002 motion in limine to bar evidence of the 1987 conviction to prove a predicate offense. That motion in limine, with exhibits, was refiled as part of appellant's January 2005 motion in limine to bar evidence of the 1987 conviction.

of *Thomas H*[.] . . . ." (Italics added, capitalization omitted.) Appellant pleaded guilty to count one, and count two was dismissed.

Appellant contends that because two offenses against Thomas are included in the supplemental police report, and because the criminal complaint references Thomas as the victim for both count one and count two, the People cannot prove that the act to which appellant pleaded guilty was the March 22 act. We disagree. Viewing the record as a whole, we conclude it is clear appellant was charged with *one* act against Thomas on March 22, 1987, and that appellant pleaded guilty to the offense against Thomas on that date.

There is no indication the February incident was contemplated in the criminal complaint, and it appears that the reference to Thomas in both counts is no more than a typographical error. There is no mention in the criminal complaint of the February date, and there is no indication in either police report that appellant committed more than one lewd or lascivious act against Thomas on March 22. Both police reports refer, however, to a separate offense against Andy on March 22.

It also appears appellant understood the complaint to charge acts against both victims, and that he purposefully pleaded guilty only to the count relating to Thomas. The probation report states: "The defendant denies molesting Andy T[.] As proof that he did not commit that crime, the defendant stresses that he refused to plead guilty to Count Two . . . ." At trial, appellant testified that he was asked to plead guilty to an offense involving Andy, but pleaded guilty to only the count relating to Thomas because he did not molest Andy.

In short, nothing suggests that either the February incident involving Thomas or the March incident involving Andy was the subject of appellant's guilty plea. We therefore reject appellant's contention that the prosecution impermissibly relied on acts other than those for which he was convicted in proving the sexually violent offense; the People appropriately relied on the March 22, 1987 incident involving Thomas. We also necessarily reject appellant's related contention that the prosecutor was allowed to choose which act was involved in the conviction, in violation of due process rights. This contention is not supported by the facts.

## 2. Substantial Sexual Conduct

Appellant makes two related claims: (a) the People improperly relied on facts other than appellant's conviction to show substantial sexual conduct in violation of his due process rights, and (b) there is insufficient evidence that the offense involved substantial sexual conduct.

■ Contrary to appellant's suggestion, the SVPA does not require that the People plead and prove substantial sexual conduct at the time of the underlying conviction. (See former § 6600.1, subd. (a).) Because an underlying offense may be based on a violation of Penal Code section 288(a), which does not require substantial sexual conduct, courts must look beyond the bare elements of the crime to prove that it involved substantial sexual conduct and qualifies as a sexually violent offense. (See, e.g., *People v. Fulcher* (2006) 136 Cal.App.4th 41, 51 [38 Cal.Rptr.3d 702] (*Fulcher*) [noting that if courts were not permitted to look beyond the crime, then a Penal Code § 288(a) violation would never qualify as a sexually violent offense].)

■ Appellant, citing *Blakely v. Washington* (2004) 542 U.S. 296 [159 L.Ed.2d 403, 124 S.Ct. 2531], further argues that only "substantial sexual conduct" admitted as part of the plea or proven to a jury as part of the underlying conviction may be used to prove a sexually violent offense. Appellant's contention that *Blakely* applies to the SVP proceeding is unavailing. Proceedings under the SVPA are civil in nature and are designed "to provide 'treatment' to mentally disordered individuals who cannot control sexually violent criminal behavior." (*Hubbart v. Superior Court* (1999) 19 Cal.4th 1138, 1171 [81 Cal.Rptr.2d 492, 969 P.2d 584] (*Hubbart*).) In *Blakely*, *supra*, 542 U.S. at pages 303–304, the United States Supreme Court held that a criminal defendant is denied his right to a jury trial if the court relies on facts not found by the jury beyond a reasonable doubt to depart from the statutory maximum. The evidence regarding the incident with Thomas was not used to impose criminal punishment, but to show the nature of the offenses for which appellant already has been convicted. (See generally *Hubbart*, *supra*, 19 Cal.4th at p. 1175 ["prior sexually violent offenses are used 'solely for evidentiary purposes' to help establish the main prerequisites upon which civil commitment is based"; "the SVPA does not impose liability or punishment for criminal conduct"]; see also *Howard*, *supra*, 70 Cal.App.4th at p. 154; § 6600, subd. (a)(3) [regarding limited use of prior convictions].) Moreover, the People must prove to the jury beyond a reasonable doubt all SVP elements in the SVP proceeding, including that appellant committed a sexually violent offense. (See § 6604.)

Finally, appellant's due process rights were not violated because he was given sufficient notice of the prosecution's intent to use the March 22 act involving Thomas in the SVP proceeding. The SVP petition and supporting declaration indicate the People intended to rely on that conviction, and appellant was given the opportunity to rebut the People's evidence at trial. (See *Lachance v. Erickson* (1998) 522 U.S. 262, 266 [139 L.Ed.2d 695, 118 S.Ct. 753] [core of the due process right is right to notice and meaningful opportunity to be heard].)

As there was no uncertainty about which act was the subject of appellant's conviction, and there was no due process violation in its use, appellant's only remaining challenge to the 1987 conviction is whether the prosecution presented sufficient evidence the offense involved substantial sexual conduct. In reviewing the evidence sufficient to support a commitment under section 6600, "courts apply the same test as for reviewing the sufficiency of the evidence to support a criminal conviction." (*People v. Mercer* (1999) 70 Cal.App.4th 463, 466 [82 Cal.Rptr.2d 723].) "Thus, this court must review the entire record in the light most favorable to the judgment to determine whether substantial evidence supports the determination below. [Citation.] To be substantial, the evidence must be ' "of ponderable legal significance . . . reasonable in nature, credible and of solid value." ' " (*Ibid.*)

" 'Substantial sexual conduct' means penetration of the vagina or rectum of either the victim or the offender by the penis of the other or by any foreign object, oral copulation, or masturbation of either the victim or the offender." (Former § 6600.1, subd. (b), added by Stats. 1996, ch. 461, § 3, p. 2815.) Masturbation "encompasses any touching or contact, however slight, of the genitals of either the victim or the offender, with the requisite intent." (*People v. Chambless* (1999) 74 Cal.App.4th 773, 783 [88 Cal.Rptr.2d 444].) "Skin-to-skin contact is not required"; the touching or contact may be through the child's clothing. (*People v. Lopez* (2004) 123 Cal.App.4th 1306, 1312 [20 Cal.Rptr.3d 801], citing *People v. Whitlock* (2003) 113 Cal.App.4th 456, 463 [6 Cal.Rptr.3d 389].)

The People's evidence is sufficient. One police report states appellant's "hand was inside of [Thomas's] pants on top of his underwear, grasping his crotch area." The other police report and the probation report also describe appellant's hand on Thomas's crotch. Appellant admitted to the probation officer at the time of the 1987 conviction that he "fondled" Thomas's penis and he reiterated that statement in a letter to the court in 1991. The contact described in the documents and in appellant's own words constitutes masturbation, and, therefore, evidence of substantial sexual conduct.

We conclude there is sufficient evidence of substantial sexual conduct and find no violation of appellant's due process rights arising from the People's use of the March 22d act and the 1987 conviction to prove a sexually violent offense.

### 3. Refusal to Allow Thomas H. to Testify

Appellant argues that the trial court erred in denying his request to call Thomas to testify, in violation of state law and his due process rights. We find no error and no constitutional violation arising from the court's ruling.

On January 19, 2005, appellant requested he be allowed to call Thomas as a witness. Appellant argued that Thomas's testimony was relevant to the predatory and substantial sexual conduct issues. As his offer of proof, appellant said that Thomas would testify that the only interaction between them was described in the police reports, which appellant interpreted to mean that he touched Thomas's "crotch," but not his penis: "Thomas will . . . state that it is—he does not know as a matter of fact whether I touched his penis or not. He's never stated that I did." Appellant also said Thomas would testify that it was a situational offense. The trial court prompted appellant for further offer of proof regarding Thomas's proposed testimony, but appellant simply stated: "Thomas would give that testimony; that all that occurred between us is all that occurred between us."

The court rejected appellant's request, finding the offer of proof inadequate. The court informed appellant it would reconsider appellant's request to call Thomas and other witnesses if appellant could "produce some current statement of theirs that makes it appear that they would have relevant testimony to offer." Appellant points to nothing in the record indicating that he followed up on the court's offer.

To preserve an evidentiary ruling for appellate review, the proponent of the evidence must make an offer of proof regarding the anticipated testimony. (See *People v. Whitt* (1990) 51 Cal.3d 620, 648 [274 Cal.Rptr. 252, 798 P.2d 849].) The offer of proof must address the "substance, purpose, and relevance of the excluded evidence" (Evid. Code, § 354, subd. (a)), and must set forth the actual evidence to be produced and not merely the facts or issues to be addressed and argued (*In re Mark C.* (1992) 7 Cal.App.4th 433, 444 [8 Cal.Rptr.2d 856]). The trial court may reject a general or vague offer of proof that does not specify the testimony to be offered by the proposed witness. (See *Gutierrez v. Cassiar Mining Corp.* (1998) 64 Cal.App.4th 148, 161–162 [75 Cal.Rptr.2d 132]; *Semsch v. Henry Mayo Newhall Memorial Hospital* (1985) 171 Cal.App.3d 162, 168 [216 Cal.Rptr. 913].)

We find that the trial court properly rejected appellant's offer of proof as inadequate. Appellant essentially stated that Thomas's testimony would be the same as his statements referenced in the police and probation reports. He conceded that he was unaware of any statements Thomas made on the issue (either at the time of the conviction or since) aside from those found in the reports. He also acknowledged that he had not, despite the use of an investigator and the availability of the civil discovery process, obtained a statement from Thomas in line with the proposed testimony. (See *People v. Angulo* (2005) 129 Cal.App.4th 1349, 1368 [30 Cal.Rptr.3d 189] [noting applicability of the Civil Discovery Act to SVP proceedings, including the ability to depose witnesses prior to trial].) Appellant's assertion that the

reference to "crotch" is ambiguous, and does not necessarily imply "penis," is simply a restatement of his anticipated argument and does not set forth the actual evidence Thomas's testimony would provide.

■ Appellant contends that the court's ruling violated his due process right to present a defense and to be given a meaningful opportunity to be heard. We disagree. "[D]ue process requires, at a minimum, that absent a countervailing state interest of overriding significance, persons forced to settle their claims of right and duty through the judicial process must be given a meaningful opportunity to be heard." (*Boddie v. Connecticut* (1971) 401 U.S. 371, 377 [28 L.Ed.2d 113, 91 S.Ct. 780].) A mere limitation on the form of evidence presented is not, however, a due process violation. (See *People v. Boyette* (2002) 29 Cal.4th 381, 427–428 [127 Cal.Rptr.2d 544, 58 P.3d 391]; see also *People v. Phillips* (2000) 22 Cal.4th 226, 238 [92 Cal.Rptr.2d 58, 991 P.2d 145] [" 'As a general matter, the ordinary rules of evidence do not impermissibly infringe on the accused's right to present a defense' "].) Appellant was not precluded from presenting other evidence to refute the 1987 conviction or, more generally, from presenting a defense. (See *Boyette, supra,* 29 Cal.4th at p. 428.) Appellant, for instance, testified on his own behalf that he touched Thomas's inner thigh, not his penis.

■ In *People v. Otto* (2001) 26 Cal.4th 200, 214 [109 Cal.Rptr.2d 327, 26 P.3d 1061] (*Otto*), the California Supreme Court left open the question of whether a defendant in an SVP proceeding has "a due process right to call witnesses such as the victims or other percipient witnesses." The Supreme Court observed, however, that the defendant "had the opportunity to confront these witnesses at the time the underlying charges were filed, but instead chose to accept a plea bargain." (*Ibid.*) In this case too, appellant had an opportunity to confront Thomas at the time of his 1987 plea. His waiver of a trial and failure to challenge Thomas's statements at the time of his conviction, the very statements for which appellant sought modification or explanation at trial, undercuts his due process argument. Appellant's request to clarify a statement that had not been raised with Thomas in almost 20 years, without any minimal attempt to contact Thomas or confirm the issue ahead of time would simply sanction a fishing expedition. Although not a prohibition on victim testimony, we note that a key purpose behind section 6600, subdivision (a)(3) of the SVPA, which permits the use of documentary evidence to prove the details underlying a conviction, is "to relieve victims of the burden and trauma of testifying." (*Otto, supra,* 26 Cal.4th at p. 208.) Allowing appellant to call Thomas in these circumstances would defeat that purpose.

Finally, we note that the trial court left open the possibility that appellant could call Thomas as a witness, provided appellant could show that placing

Thomas on the stand would be more than a futile search for a favorable explanation of otherwise clear statements. In this specific context, we cannot conclude the court's ruling violated appellant's due process rights.

## B. 1991 Conviction

Appellant challenges the People's use of the victim's postplea descriptions of the 1990 incident to prove that appellant's 1991 conviction involved substantial sexual conduct.

### 1. Factual Background

Appellant met Ethan F. while on parole in 1989 and developed a relationship with him. Appellant visited Ethan frequently, brought him gifts, and took him camping. In June 1990, appellant took Ethan, then 10 years old, on a trip to an amusement park during which they spent two nights alone together in a Santa Clara motel. According to a 1991 police report that led to charges against appellant, and a probation report related to appellant's sentencing, appellant offered Ethan money to have sex with him. Ethan said no. After Ethan fell asleep, appellant repeatedly attempted to fondle Ethan, but Ethan climbed out of bed and slept on the floor of the motel room. On December 1, 1991, appellant pleaded guilty to one count of violating Penal Code section 288(a) for the June 1990 incident, and he was sentenced to 16 years in state prison.

In January 2000, after the People filed the SVP petition, an investigator with the Santa Clara District Attorney's office contacted Ethan to determine whether he remembered additional details regarding the June 1990 crime. A report dated January 11, 2000, memorialized the investigator's conversation with Ethan. According to the report, Ethan said he had been embarrassed and ashamed at the time of the original investigation and had withheld certain details about the crime. Ethan said that although the details in the 1991 police report were accurate, more sex acts occurred than he originally reported; appellant also touched Ethan's penis with his hands, skin to skin, appellant masturbated him and forced Ethan to masturbate appellant, and appellant orally copulated him. Ethan also told the investigator that appellant had attempted anal intercourse with him, but was unsuccessful. A 2001 report by the investigator noted that Ethan later clarified that appellant completed anal intercourse, but was unsuccessful in ejaculating.

Appellant disputed this account when called as the People's witness at trial. He testified that he asked Ethan if he wanted to have sex and offered him money to let appellant hold his penis, but Ethan said no. Appellant

admitted that he attempted to fondle Ethan, but said he was successful only in holding Ethan and sleeping in bed with him.

Appellant called Joseph Haebe, formerly of the Santa Cruz Police Department, to testify regarding the incident with Ethan. Haebe interviewed Ethan in 1991 and prepared the police report that led to the 1991 charges. Haebe testified that Ethan told him that appellant offered him money for sex. Ethan said that appellant made repeated attempts to fondle him inside his underwear, but Ethan did not say that appellant touched his penis or took any other sexually explicit actions.

Kevin Smith, the investigator who interviewed Ethan in January 2000 and prepared the 2000 and 2001 reports, also testified as a defense witness. He confirmed that Ethan told him that appellant touched his penis, made him masturbate appellant, orally copulated him, and unsuccessfully attempted anal intercourse. Ethan also said that on a separate occasion, appellant masturbated him and forced him to orally copulate appellant. Smith testified it is not uncommon for child molestation victims to recall additional details of the crime years later.

Prior to trial, appellant objected to the People's request to introduce Smith's 2000 and 2001 reports detailing Ethan's updated account of the 1990 incident to prove that the underlying offense for the 1991 conviction involved substantial sexual conduct. After reading the transcript from the 2001 SVP trial, the trial court admitted the reports for the stated purpose. During trial, the People relied exclusively on the reports to show substantial sexual conduct related to the 1991 conviction.

## 2. Due Process Analysis

Appellant objects generally to the admission of evidence obtained years after the plea to show substantial sexual conduct and contends that admission of the investigator's 2000 and 2001 reports, in particular, violated his due process rights.

 Felony violations of Penal Code section 288(a) that "result in a conviction" may constitute sexually violent offenses. (§ 6600, subd. (b).) Prior to Proposition 83, section 6600.1 provided that if the victim of the Penal Code section 288(a) violation "is a child under the age of 14 and *the offending act or acts involved substantial sexual conduct*, the offense shall constitute a 'sexually violent offense' for purposes of Section 6600." (Former § 6600.1, subd. (a), italics added.) Section 6600, subdivision (a)(3) provides, in part: "The existence of any prior convictions may be shown with documentary evidence. *The details underlying the commission of an offense that*

*led to a prior conviction*, including a predatory relationship with the victim, may be shown by documentary evidence, including, but not limited to, preliminary hearing transcripts, trial transcripts, probation and sentencing reports, and evaluations by the State Department of Mental Health."[6] (Italics added.)

Appellant interprets subdivision (a)(3) of section 6600 as limiting all evidence relating to the underlying offense to evidence that "led to a prior conviction" and contends that in the case of a guilty plea only those details known at the time of the plea "led to" the conviction. Appellant thus argues that admission of any postplea evidence to prove a sexually violent offense is contrary to the statute and, on that basis, is a violation of due process rights. We find no basis in the plain language of the statute to limit a determination of whether the "offending act or acts involved substantial sexual conduct" to the specific description memorialized in preplea documents.

■ "We turn first to the statutory language, giving the words their ordinary meaning. [Citation.] If the statutory language is not ambiguous, then the plain meaning of the language governs. [Citation.]" (*People v. Lopez* (2005) 34 Cal.4th 1002, 1006 [22 Cal.Rptr.3d 869, 103 P.3d 270].) First, the quoted portion of section 6600, subdivision (a)(3) refers only to the admissibility of documents to prove a qualifying offense. This provision does not purport to define "offense" or "offending act" as used in former section 6600.1. Second, subdivision (a)(3) authorizes the use of documentary evidence to show the details of the "*offense* that led to a prior conviction," not to show the *evidence* that led to a prior conviction. (Italics added.) Third, subdivision (a)(3) specifically authorizes the use of documents prepared after conviction, listing probation reports and reports by the State Department of Mental Health.

In *Fulcher*, *supra*, 136 Cal.App.4th 41, the court considered a similar situation involving postplea evidence. In that case, the victim testified at the SVP trial regarding an act of substantial sexual conduct that was not included in the victim's description of the offense prior to the defendant's plea and conviction; the victim initially stated only that the defendant put his mouth near the victim's penis and at the SVP trial added that the defendant touched the victim's penis with his mouth. (*Id.* at p. 46.) The court rejected the defendant's argument that the People cannot rely on evidence outside the record of conviction to show substantial sexual conduct. (*Id.* at pp. 50–51.) The court explained that because a Penal Code section 288(a) conviction does not necessarily involve force, duress or substantial sexual conduct, "proof of the elements of the offense or evidence contained solely within the 'record of conviction' may be insufficient to establish the offense qualifies as a sexually

---

[6] This section was not altered by Proposition 83.

violent offense . . . ." (136 Cal.App.4th at p. 51.) Because the statute includes a violation of Penal Code section 288(a) as a qualifying offense, an interpretation of the SVPA that limits evidence of sexually violent offenses to the record of conviction would be contrary to clear legislative intent. (See § 6600, subd. (b); former § 6600.1, subds. (a), (b).) We therefore agree with the *Fulcher* court's implied conclusion that the description of the offense, for purposes of proving a sexually violent offense, is not limited to the precise description found in preconviction documents.

In this case, the felony complaint alleges only that between June 1 and June 30 of 1990, appellant did "willfully and lewdly commit a lewd and lascivious act upon and with the body and certain parts and members thereof of ETHAN [F.] . . . with the intent of arousing, appealing to, and gratifying the lust, passion, and sexual desires of the said defendant and of said child." Appellant points to no other evidence in the record that appellant pleaded guilty to specific conduct. Thus, the "offense" that led to his 1991 conviction is simply a "lewd and lascivious act" against Ethan, the details of which can be found only in extraneous evidence. (See, e.g., *Howard, supra,* 70 Cal.App.4th at p. 155; *Fulcher, supra,* 136 Cal.App.4th at pp. 50–51.) Because the 2000 and 2001 statements describe lewd and lascivious conduct against Ethan, they potentially relate to the offense underlying his Penal Code section 288(a) conviction and are relevant to a determination of whether the "offending act or acts involved substantial sexual conduct."

In sum, we find that admission of postplea evidence is not contrary to the plain language of the statute. We therefore reject appellant's claim that the court violated his due process rights by admitting the evidence in contravention of the statute. We consider separately, however, the question of whether the use of the 2000 and 2001 hearsay statements in the investigator's reports to prove substantial sexual conduct violated appellant's due process rights.

The California Supreme Court, in *Otto, supra,* 26 Cal.4th 200, 203, considered whether section 6600, subdivision (a)(3) "allows the admission of multiple hearsay that does not fall within any exception to the hearsay rule, and if so, whether reliance on this evidence violates a defendant's right to due process." The court concluded that the statute does allow admission of multiple hearsay—in particular, victim statements contained in probation and sentencing reports—not otherwise subject to a hearsay exception. (26 Cal.4th at pp. 206–209.) Here too we are presented with multiple hearsay that does not fall within any other exception to the hearsay rule. Although the victim statements in this case are not in a probation or sentencing report, the evidence is arguably admissible under the broad terms of the statute. Subdivision (a)(3) of section 6600 provides a nonexclusive list of admissible evidence, and expressly allows for the admission of documentary evidence

created after the defendant's conviction. (See § 6600, subd. (a)(3) [authorizing use of, among other things, "probation and sentencing reports, and evaluations by the State Department of Mental Health"].) Appellant does not contend that there is a meaningful distinction between the investigator's report and other documentary evidence admissible under the statute. We therefore focus on the broader question: Does the People's reliance on this hearsay evidence violate appellant's due process rights? In *Otto*, the court examined the extent of due process afforded in an SVP proceeding and held that the prosecution's reliance on the hearsay evidence presented in the case did not violate the defendant's due process rights. (26 Cal.4th at pp. 207–209, 211–215.) We review the court's due process analysis in detail to resolve the question presented here.

"Because civil commitment involves a significant deprivation of liberty, a defendant in an SVP proceeding is entitled to due process protections." (*Otto*, *supra*, 26 Cal.4th at p. 209.) The following factors are weighed to determine the extent of due process protection which must be accorded: "(1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail; and (4) the dignitary interest in informing individuals of the nature, grounds, and consequences of the action and in enabling them to present their side of the story before a responsible government official." (*Id.* at p. 210.)

Applying these factors, we first note that appellant, like all defendants in SVP cases, will be impacted greatly by the outcome of the proceedings; "the private interests that will be affected by the official action are significant limitations on [appellant's] liberty, the stigma of being classified as an SVP, and subjection to unwanted treatment." (*Otto*, *supra*, 26 Cal.4th at p. 210; see also *People v. Hurtado* (2002) 28 Cal.4th 1179, 1194 [124 Cal.Rptr.2d 186, 52 P.3d 116] (*Hurtado*) [observing that an SVPA commitment "involves a deprivation of liberty, and a lasting stigma" and that "the proceedings may result in confinement for life"].) Appellant's private interests are, however, offset by the government's interest "in protecting the public from those who are dangerous and mentally ill"—the third factor in the due process analysis. (*Otto*, *supra*, 26 Cal.4th at p. 214.)

Consideration of the second factor—the impact of the procedures used on appellant's due process rights and the value, if any, of alternative procedures—requires a closer examination of the specific circumstances presented. (*Otto*, *supra*, 26 Cal.4th at p. 210.) Reliance on victim hearsay statements, in particular, requires that the statements "contain special indicia of reliability to

satisfy due process." (*Ibid.*) Facts relevant to the statements' reliability, according to the *Otto* court, "include the circumstances surrounding the making of the statement, if known, such as spontaneity and consistent repetition, the mental state of the declarant, use of terminology unexpected of a child of a similar age, lack of motive to fabricate, and whether the hearsay statement was corroborated." (*Id.* at p. 211.)

Here, the circumstances surrounding the 2000 and 2001 statements do not support their reliability. The statements were not spontaneous, are inconsistent with Ethan's 1991 statements, and have not been corroborated. Additionally, the statements were not made in close proximity to the crime and were elicited as part of the People's SVP investigation.[7] Although the reports were prepared by an officer in his official capacity, this fact alone is not sufficient to ensure the reliability of the underlying victim statements.

"The most critical factor demonstrating the reliability of the victim hearsay statements," as determined by the California Supreme Court, also does not support reliability of the statements at issue here. (*Otto, supra,* 26 Cal.4th at p. 211.) According to *Otto,* the fact that the defendant "was convicted of the crimes to which the statements relate" generally means that "some portion, if not all, of the alleged conduct will have been already either admitted in a plea or found true by a trier of fact after trial." (*Ibid.*) The defendant in *Otto* in fact admitted that the factual basis for his plea was found in the police reports, and thus admitted the truth of the victim's statements. (*Ibid.*) In this case, however, appellant's plea could not have contemplated the 2000 and 2001 statements, which were made 10 years after the plea and which vary greatly from the victim's statements at the time of conviction. Because the statements were not made until after appellant's conviction, this critical reliability factor is absent.

In finding the victim statements in a probation report reliable, the *Otto* court also noted that the Legislature specifically approved of the use of probation reports, that the California Rules of Court contemplate that presentence reports will use police reports, including victim statements, to prepare crime summaries, and that defendants have an opportunity to review and challenge inaccuracies in presentence or probation reports prior to sentencing. (*Otto, supra,* 26 Cal.4th at p. 212.) The *Otto* court observed that courts also rely on such reports to impose appropriate sentences and, therefore, rely on

---

[7] A letter from Smith to Ethan in January 2000 preceded Ethan's 2000 account of the offense. It states, in relevant part: "The Santa Clara County Office of the District Attorney is currently attempting to block the release of a potentially violent sex offender. During pre-trial investigation, it was determined that you may have been a witness/victim of a similar incident involving this same defendant. [¶] It is very important that our office speak to you about this case." Smith's phone conversation with Ethan followed, during which Smith obtained the contested statements found in the 2000 report.

victim hearsay found in such reports to make important factual findings about the crime and sentence. (*Id.* at pp. 212–213.) Again, the indicia of reliability found in *Otto* are not present in this case: (1) the Legislature did not specifically approve of the use of postconviction investigative reports prepared at the behest of the district attorney's office to show the details of the underlying offense; (2) appellant did not have the opportunity to challenge the reports' accuracy; and (3) courts do not routinely rely on such reports in making critical factfinding decisions.

As part of its consideration of the second due process factor, the *Otto* court further noted that the defendant was aware of the statements' significance by the time of the SVP proceeding and that all SVP defendants have the opportunity to present the opinions of psychological experts and to cross-examine any prosecution witnesses during the proceeding. (*Otto, supra,* 26 Cal.4th at p. 214.) Although these same factors are present in this case, we find them insufficient to balance out the serious reliability concerns, described above, which indicate that reliance on these victim hearsay statements violated appellant's due process rights.

An examination of the additional procedures available in this case, and not utilized, supports the finding of a due process violation. Prior to trial, appellant requested permission to call Ethan to testify regarding the 1990 incident and his subsequent statements. The People objected, arguing, among other things, that requiring Ethan to testify would subject him to "revictimization." The People made no showing that Ethan was unavailable and Ethan, in fact, testified at the prior trial that resulted in a hung jury. The court denied appellant's request to call Ethan as a witness, noting that Ethan's testimony from the 2001 mistrial, including cross-examination by appellant's attorney,[8] was available as an alternative. The People did not call Ethan as a witness at trial, and neither party introduced the 2001 trial testimony.

Although "[t]here is no right to confrontation under the state and federal confrontation clause in civil proceedings, . . . such a right does exist under the due process clause." (*Otto, supra,* 26 Cal.4th at p. 214.) "[T]he right to confront and to cross-examine [under the due process clause] is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests[,] . . . [b]ut its denial or significant diminution calls into question the ultimate ' "integrity of the fact-finding process" ' and requires that the competing interest be closely examined. [Citation.]" (*Chambers v. Mississippi* (1973) 410 U.S. 284, 295 [35 L.Ed.2d 297, 93 S.Ct. 1038].) As we noted above, because the defendant in *Otto* did not attempt to call any witnesses other than a psychological expert, the court left open the question of whether

---

[8] During cross-examination in the 2001 trial, Ethan testified, among other things, that the 2000 report was not entirely correct and did not accurately reflect his statements to Smith.

a defendant in an SVP proceeding has "a due process right to call witnesses such as the victims or other percipient witnesses." (*Otto, supra,* 26 Cal.4th at p. 214.) The court observed, however, that the defendant in *Otto* "had the opportunity to confront these witnesses at the time the underlying charges were filed, but instead chose to accept a plea bargain." (*Ibid.*) The court further recognized a competing interest present in SVP proceedings—the Legislature's apparent intention "to relieve victims of the burden and trauma of testifying about the details of the crimes underlying the prior convictions." (*Id.* at p. 208, citing § 6600, subd. (a)(3).)

Unlike the situation in *Otto* (and with regard to Thomas, above), in which the People relied only on statements made prior to or contemporaneously with the conviction, appellant did not have a meaningful opportunity at the time of the underlying charges to challenge the allegations now levied against him. In this context, the general interest in protecting victims from the trauma of testifying cannot justify the People's use of unreliable hearsay. The People's failure to call Ethan to the stand, or even to introduce his prior trial testimony, supports the finding that the People's reliance on the 2000 and 2001 hearsay statements is constitutionally suspect.

The use of hearsay statements, in place of Ethan's trial testimony, also implicates appellant's ability to present his side of the story, a consideration under the fourth factor in the due process analysis. (*Otto, supra,* 26 Cal.4th at p. 215.) The absence of live testimony limited the jury's ability to judge Ethan's credibility and to consider fully a pivotal issue in appellant's defense. (See, e.g., *In re Clifton V.* (2001) 93 Cal.App.4th 1400, 1404–1405 [114 Cal.Rptr.2d 1] [recognizing due process right to live testimony in a contested civil proceeding if there is an issue of credibility]; see also *Maryland v. Craig* (1990) 497 U.S. 836, 845 [111 L.Ed.2d 666, 110 S.Ct. 3157] [recognizing that live testimony compels a witness " 'to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief' "].)

After examination of the four *Otto* factors, we conclude that even if the hearsay evidence is admissible under section 6600, subdivision (a)(3), reliance on the 2000 and 2001 hearsay evidence to prove a sexually violent offense violated appellant's due process rights.[9]

---

[9] Throughout the respondent's brief, the People stress that appellant was given the option of introducing Ethan's 2001 trial testimony. The burden, however, was on the People to prove all SVP elements beyond a reasonable doubt. We do not place the onus on appellant to introduce incriminating evidence in an effort to protect his rights. Because the People did not introduce Ethan's 2001 trial testimony to establish substantial sexual conduct, we do not consider

### 3. Harmless Error Analysis

The final question is whether this constitutional error was prejudicial. "Although the SVPA is a civil proceeding, its procedures have many of the trappings of a criminal proceeding"; "[a]n SVPA commitment unquestionably involves a deprivation of liberty, and a lasting stigma . . . ." (*Hurtado, supra,* 28 Cal.4th at pp. 1192, 1194.) The test set forth in *Chapman v. California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824] therefore governs review of constitutional error in SVPA cases: Federal constitutional error is reversible unless shown to be harmless beyond a reasonable doubt. (*Hurtado, supra,* 28 Cal.4th at p. 1194.)

The People point to Smith's testimony and the fact that the People presented evidence of two other sexually violent offenses, the convictions involving Matthew and Thomas, to show that any error was harmless beyond a reasonable doubt. We are not persuaded. Smith's testimony was based on the same unreliable hearsay discussed above. Moreover, appellant called Smith as a witness *because* the court admitted the investigator's reports. To use Smith's testimony to find that there was no prejudice would require defendants faced with rulings contrary to their constitutional rights to choose between attempting to lessen the impact and preserving their constitutional rights for possible resolution on appeal. This is unacceptable.

The fact that the People alleged two other qualifying offenses to prove the predicate sexually violent offenses in this case also does not convince us that the error was harmless beyond a reasonable doubt. Appellant contested the Thomas conviction and nothing in the record indicates which convictions the jury relied upon in finding the SVP petition true. It also is likely that Ethan's hearsay statements—which describe the most egregious behavior presented during the trial—contributed to the jury's overall determination that appellant is a sexually violent predator.

Finally, we note that appellant's first SVP trial resulted in a hung jury. Yet, in that trial, appellant conceded the mental disorder element of the SVP finding and contested only the convictions. One primary difference between the two trials is the fact that Ethan testified and was subject to cross-examination during the 2001 trial.

---

whether, as a substitute to live testimony, the transcript would satisfy due process. We hold only that the fact that appellant was given the option of introducing such a transcript in his defense is inadequate.

We cannot conclude that the error in this case was harmless beyond a reasonable doubt, and we reverse.[10]

## C. Jury Instructions

Although we reverse based on the due process violation, we consider appellant's claims of instructional error because they relate to the claims addressed above and some of these issues may arise in future proceedings in this case.

### 1. Failure to Define "Offending Act"

Appellant argues that the jury instruction given in this case regarding the required elements of an SVP determination (a modified version of CALJIC No. 4.19) was inadequate. Appellant claims specifically that the court was required to inform the jury that the requisite "substantial sexual conduct" must be part of the "discrete touching resulting in conviction." Under the instructions given, appellant argues, the jury could have found substantial sexual conduct in acts other than those to which he pleaded guilty.

The People first contend that appellant's request is for a "pinpoint" instruction and, therefore, appellant waived the issue by failing to request the instruction at trial. We disagree. Appellant's request is for a clarification or restatement of the general principles of SVP law. " 'Even in the absence of a request, a trial court must instruct on general principles of law that are . . . necessary to the jury's understanding of the case.' " (*People v. Roberge* (2003) 29 Cal.4th 979, 988 [129 Cal.Rptr.2d 861, 62 P.3d 97].) We therefore consider appellant's claim on the merits.

The obligation to instruct the jury, sua sponte, on a general principle of law "comes into play when a statutory term 'does not have a plain, unambiguous meaning,' has a 'particular and restricted meaning' [citation], or has a technical meaning peculiar to the law or an area of law [citation]." (*People v. Roberge, supra,* 29 Cal.4th at p. 988.) " '[T]he language of a statute defining a crime or defense is generally an appropriate and desirable basis for an instruction, and is ordinarily sufficient when the defendant fails to request

---

[10] Appellant also claims that the trial court's refusal to allow him to call Ethan to testify violated his due process rights and that because the jury should not have been allowed to rely on the investigator reports, there is insufficient evidence of substantial sexual conduct. We do not reach these claims. Appellant sought to call Ethan to rebut the 2000 and 2001 reports, which we conclude were improperly admitted. Had the court properly excluded the reports, the People may have called Ethan to testify or introduced his prior trial testimony. Thus, any analysis of the sufficiency of the evidence would be speculative. Additionally, because we reverse, we do not reach appellant's additional claim regarding bifurcation of the trial.

amplification. If the jury would have no difficulty in understanding the statute without guidance, the court need do no more than instruct in statutory language.' " (*People v. Estrada* (1995) 11 Cal.4th 568, 574 [46 Cal.Rptr.2d 586, 904 P.2d 1197], quoting *People v. Poggi* (1988) 45 Cal.3d 306, 327 [246 Cal.Rptr. 886, 753 P.2d 1082].)

The modified version of CALJIC No. 4.19 given in this case states, in part: " 'Sexually violent offense' includes a violation of Penal Code section 288(a) (Lewd Act on a Child) that results in a conviction, when the victim is a child under the age of fourteen years and the offending act or acts involve substantial sexual conduct." This language closely tracks the language of the SVPA, which at the time of trial provided that a conviction for a violation of Penal Code section 288(a) may constitute a sexually violent offense if the victim "is a child under the age of 14 and the offending act or acts involved substantial sexual conduct . . . ." (Former § 6600.1, subd. (a); see also § 6600, subd. (b).) Additionally, the instruction is clear on its face. The instruction states that the "offending act" underlying the conviction must involve substantial sexual conduct. This is an adequate statement of the law. (Cf. *People v. Williams* (2003) 31 Cal.4th 757, 774–775 [3 Cal.Rptr.3d 684, 74 P.3d 779] [rejecting argument to augment definition of "diagnosed mental disorder" already adequately defined by Legislature in the SVPA].)

Appellant argues, however, that "[t]he jury was not informed that a 'conviction' for a lewd act upon a child had a restricted meaning and a particular technical meaning." According to appellant, a conviction for Penal Code section 288(a) encompasses only a single touching, and, therefore, the court was required to make clear that the "offending act" is limited to the single touching that led to conviction. We find no support for this argument.

Appellant cites *People v. Perez* (1979) 23 Cal.3d 545 [153 Cal.Rptr. 40, 591 P.2d 63] and *People v. Brown* (1994) 28 Cal.App.4th 591 [33 Cal.Rptr.2d 678]—cases that address the application of Penal Code section 654 (which prohibits double punishment for a single act or omission) to situations in which the defendant committed several sex offenses. Neither case involves the SVPA, nor even discusses Penal Code section 288(a), and the holdings are inapplicable to the issue before us. (See *People v. Perez, supra*, 23 Cal.3d at p. 554 [finding that Penal Code "section 654 does not preclude punishment for each of the sex offenses committed by defendant"]); *People v. Brown, supra*, 28 Cal.App.4th at pp. 601–602 [reaching same conclusion regarding eight counts of forcible rape].) Indeed, we find nothing in either case to suggest that a violation of Penal Code section 288(a) is limited to a single, discrete touching.

Finally, we observe that appellant's argument, in essence, is a restatement regarding the relevancy of the later disclosed acts involving Ethan and the

alleged ambiguity regarding which acts the 1987 conviction encompassed. These arguments are addressed fully in previous parts. We find no reason to augment the clear language of the statute by narrowly defining an "offending act" and find no instructional error.

## 2. Unanimity Instructions

Appellant claims the trial court erred in failing to instruct the jurors that they must unanimously agree on which prior convictions involved substantial sexual conduct. Appellant similarly claims that the court erred in failing to instruct the jurors that they must unanimously agree on which acts constituted substantial sexual conduct. We conclude that the court was not required to give either unanimity instruction.

An SVP proceeding is civil, not criminal, and the unanimity require-ment for an SVP proceeding is established by statute. (See *Fulcher, supra,* 136 Cal.App.4th at p. 59 [noting that because SVP proceedings are civil, the criminal "rule requiring a unanimity instruction does not apply"].) Under the SVPA, the jury must determine whether the requirements for classification as an SVP have been established "beyond a reasonable doubt" and the jury's *verdict* must be unanimous. (§ 6604; see § 6603, subd. (f); *Hubbart, supra,* 19 Cal.4th at p. 1147.) There is no statutory requirement regarding unanimity for each subpart of the SVP determination.

Even under the unanimity rule applicable to criminal cases, a unanimity instruction is required only in specific circumstances. The instruction is required if the evidence shows that several criminal acts may have been committed, but the defendant was not charged with a separate violation for each act; there must be a unanimous verdict regarding each specific act for which the defendant is convicted. (*People v. Washington* (1990) 220 Cal.App.3d 912, 915 [269 Cal.Rptr. 668]; see also *People v. Russo* (2001) 25 Cal.4th 1124, 1132–1133 [108 Cal.Rptr.2d 436, 25 P.3d 641].) If, in contrast, the prosecution presents multiple theories regarding one criminal act or event, a unanimity instruction is not required. (*Russo, supra,* 25 Cal.4th at p. 1132.) As the court in *Fulcher, supra,* 136 Cal.App.4th at page 59, succinctly observed: "[A] unanimity instruction is required concerning acts that could be charged as separate offenses but is not required as to elements of a charged criminal offense." In *Russo,* for example, the California Supreme Court held that a jury need not unanimously agree which specific action satisfied the "overt act" element of a conspiracy charge as long as the jurors agreed at least one overt act was committed. (*Russo, supra,* 25 Cal.4th at p. 1134.)

In this case, the People presented multiple theories to satisfy the first element required to prove appellant is an SVP—the requirement of two

"sexually violent offenses." Because the 1983, 1987 and 1991 convictions constitute alternative means of satisfying the "sexually violent offense" element, similar to presentation of multiple possible overt acts in a conspiracy case, we conclude the jury need not unanimously agree on which two convictions satisfied the "sexually violent offenses" element. The People's alleged presentation of multiple acts that could show "substantial sexual conduct," a relevant factor in establishing a "sexually violent offense," is similarly a presentation of alternative theories that does not require unanimity.

*Fulcher, supra,* 136 Cal.App.4th 41, an SVP case, is analogous. There, the defendant argued that the "court erred in failing to give sua sponte a unanimity instruction (CALJIC No. 17.01) on whether the jury found force, duress or substantial sexual conduct." (136 Cal.App.4th at p. 59.) The court noted that "duress, force, and substantial sexual conduct are alternative factors or elements required in finding the . . . offense qualifies as a sexually violent offense," and concluded that a unanimity instruction regarding those factors was not required sua sponte. (*Ibid.*)

## D. Constitutionality of the SVPA

One final contention must be resolved on appeal: appellant's claim that the SVPA violates ex post facto and double jeopardy principles of the state and federal Constitutions.

In *Hubbart, supra,* 19 Cal.4th at pages 1171–1178, the California Supreme Court concluded that the SVPA is not punitive in nature and upheld the law against an ex post facto challenge: "Under these circumstances, the SVPA does not impose liability or punishment for criminal conduct, and does not implicate ex post facto concerns insofar as pre-Act crimes are used as evidence in the SVP determination." We are bound by that decision. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) Appellant's double jeopardy claim fails for the same reason. "The double jeopardy bar protects against a *second prosecution for the same offense following an acquittal or conviction,* and also protects against *multiple punishment for the same offense.*" (*People v. Bright* (1996) 12 Cal.4th 652, 660 [49 Cal.Rptr.2d 732, 909 P.2d 1354], italics added, overruled on other grounds in *People v. Seel* (2004) 34 Cal.4th 535 [21 Cal.Rptr.3d 179, 100 P.3d 870].) Thus, the determination that the SVPA is not punitive "removes an essential prerequisite for both . . . double jeopardy and *ex post facto* claims." (*Kansas v. Hendricks* (1997) 521 U.S. 346, 369 [138 L.Ed.2d 501, 117 S.Ct. 2072].) We reject appellant's ex post facto and double jeopardy claims as without merit.

## III. Disposition

The order is reversed.

McAdams, J., and Duffy, J., concurred.