Schulman, J.**
*781 *212 Defendant Julio Cesar Olivera Zepeda appeals a judgment entered upon a jury verdict finding him guilty of aggravated sexual *213 assault of a child ( Pen. Code, 1 § 269, subd. (a)(4) ), forcible lewd acts on a child (§ 288, subd. (b)(1) ), and continuous sexual abuse of a child (§ 288.5). He contends the evidence is insufficient to support a finding that he committed four of the crimes through force, violence, fear, or duress, and that the trial court erred in instructing the jury as to another of the counts. We shall affirm the judgment.
I. BACKGROUND
Defendant was the stepfather of the victim of his crimes (Minor). He and Minor's mother (Mother) married in 2009. The events in question took place in late 2013 and early 2014, when Minor was 10 and 11 years old.
Defendant was about 5 feet 11 inches or six feet tall, and weighed approximately 200 pounds. Minor was approximately four and a half feet tall and weighed 80 or 90 pounds.
Minor's Testimony at Trial
Minor shared a bedroom with her younger sister (Sister), and defendant shared a bedroom with Minor's mother (Mother).
One night, while Mother was in the shower and Sister was in bed, Minor was on a small couch with defendant, watching him play a video game. Defendant told Minor, "Let's play a game." He touched her "privates," underneath her clothing, with his finger, and rubbed her, until Mother got out of the shower.[2] Defendant told Minor not to tell anyone. When asked if defendant hurt her, Minor replied that "[h]e hurt [her] mentally," and that he hurt her feelings.
Defendant touched Minor on other occasions. Once, when Minor was 11 years old, he touched her uncovered "private" with his "private."[3]
Minor's Interview
The jury saw a recording of a forensic interview Minor had with a social worker in February 2014. Minor said defendant had touched her "private" more than one time, sometimes when Mother or Sister were showering. A week or two before the interview, defendant had been playing a video game, *214 and he paused the game, got off the bed, moved her to the other side of the bed, "squished" her toward him, and pulled her pants down. He put his hand between her legs, then "started putting his mouth," or licking her after her underwear had been pulled off. Then he put his "private" into Minor's "private," and "started moving it around, like a worm" with his hand; it also touched her anal area. Defendant asked Minor if she liked it, but she did not respond, thinking that if she said yes, he would continue, and if she said no, he would have continued until she said yes.
Minor told the interviewer that sometimes defendant rubbed her "front part"
*782 with his finger, and it would sometimes hurt her.[4] The first time he touched her genitals, he made her lie down, put his hand down her pants and rubbed her genitals. He told her "shh, shhh," so she wouldn't be loud, because it hurt when he rubbed her. He rubbed so fast she felt it burned her, and he got a wet napkin for her to keep her from saying "ow, ow" loudly enough for Mother to hear. She was 10 or 11 years old, and in fifth grade, at the time.
Minor said defendant touched her approximately twice a week.[5] Minor recalled defendant touching her genitals, in his bedroom, when Mother and Sister were out grocery shopping. Sometimes he would turn off the light, and on one occasion, he "pull[ed] [her] to that side," and put his "mouth and tongue on the private." Defendant began by touching Minor with his hands, and he touched her "with his tongue and his private" less than five times. On one occasion, he grabbed Minor's hand and moved her hand toward his "private," until she touched it with the palm of her hand.
The last time defendant touched Minor, she was sleeping on the same mattress as Sister. Minor was against the wall to avoid being close to defendant. While Mother and Sister were sleeping, defendant moved Sister out of the way, moved Minor closer to him, spread her legs, and "use[d] his hand" and did "the licking."
Minor said she was afraid to tell anyone what had happened because she did not know what defendant might do to her, Mother, or Sister; she was concerned he might abuse Sister as well.
*215 Defendant's Interview
Defendant spoke with two police detectives after being read his rights.[6] He initially denied having touched Minor inappropriately, but his version of events changed as the interview progressed. On one occasion as he and Minor were playing, he put his feet on her stomach, and she "put ... the feet in that part." He told her not to do so. He said that one time, "I'm putting my mouth in her" for "like-two seconds." He said he was playing with Minor and Sister on the bed, and "she tries to put my hand in there," "close to vagina." He said he used his tongue on Minor's vagina for "[t]wo or three seconds." He had moved her underwear to the side. He said that once or twice, he touched her with his hand, over her clothing.
Upon further questioning, defendant said he had touched Minor with his hands or mouth "[a]round five" times. He later said he had touched her vagina with his hand five or six times, skin to skin. The first time, he was picking Sister up, and Minor wanted him to pick her up as well. He grabbed her from behind and put her on the bed, and touched her vagina. Another time, he was tickling Minor while playing with her and Sister, and he touched Minor's vagina, underneath her pants. Another time, he touched "[t]he top" with his penis. Defendant said he had touched Minor's vagina with his mouth once or twice; one of those times had been "in top of the clothes."
Verdicts
The jury found defendant guilty of two counts of aggravated sexual assault of a *783 child-oral copulation ( § 269, subd. (a)(4) ; counts two and three); seven counts of committing a forcible lewd act on a child (§ 288, subd. (b)(1); counts four through ten); and one count of continuous sexual abuse of a child (§ 288.5; count twelve). Counts four through seven were based on four instances of defendant touching Minor's vagina; count eight was based on Minor's hand touching defendant's penis; count nine was based on defendant's penis touching her vagina; and count ten was based on his penis touching her anus. The trial court sentenced defendant to a total term of 56 years plus 30 years to life.
II. DISCUSSION
A. Sufficiency of Evidence of Force or Duress*** *216 B. Instruction Regarding Oral Copulation
During its deliberations, the jury sent a note to the court asking, in connection with the second count of oral copulation (count three), "Definition of oral copulation: [¶] 1. [D]oes this include over the top of clothing?" The trial court referred the jury to the general instructions on oral copulation, which correctly stated, as pertinent here, "Oral copulation is any contact, no matter how slight, between the mouth of one person and the sexual organ or anus of another person. Penetration is not required." (See People v. Grim (1992) 9 Cal.App.4th 1240, 11 Cal.Rptr.2d 884 [defining the crime]; see also People v. Dement (2011) 53 Cal.4th 1, 42-43, 133 Cal.Rptr.3d 496, 264 P.3d 292, disapproved on another point in People v. Rangel (2016) 62 Cal.4th 1192, 1216, 200 Cal.Rptr.3d 265, 367 P.3d 649.) The court then told the jury that the question of whether oral copulation occurred over the top of clothing was one for the jury to decide.[7]
Defendant notes that he stated in his interview that he had touched Minor's vagina with his mouth once or twice, and that one of those incidents was "in top of the clothes." He contends that the jury's question indicates it had his statement in mind and that the trial court should have instructed the jury that oral copulation requires skin-to-skin contact as a matter of law. He argues we should therefore reverse the verdict on count three.
We disagree. The parties have drawn our attention to no published cases in this state considering whether the presence of clothing defeats a charge of oral copulation, and our own research has disclosed none. However, we are guided by People v. Ribera (2005) 133 Cal.App.4th 81, 83, 34 Cal.Rptr.3d 538 ( Ribera ), which considered whether anal penetration through clothing was sodomy. (§ 286.) The child *784 victim in that case was wearing underwear when the defendant " 'poked' his penis 'really hard' into her 'behind,' " hurting her. ( Ribera , at p. 84, 34 Cal.Rptr.3d 538.) On appeal, the defendant contended his actions constituted penetration by a foreign object-i.e., the victim's clothing-rather *217 than sodomy. ( Id . at pp. 85-86, 34 Cal.Rptr.3d 538 ; § 289.) The appellate court rejected his argument that skin-to-skin contact was necessary to establish the crime of sodomy, reasoning that section 286, which defined sodomy as "sexual conduct consisting of contact between the penis of one person and the anus of another person" (§ 286, subd. (a) ) contained no express or implied requirement that the contact be skin-to-skin. ( Ribera , at p. 85, 34 Cal.Rptr.3d 538.) It was "immaterial whether there was any clothing or barrier between the anus and the penis at the time of the penetration." ( Id . at p. 86, 34 Cal.Rptr.3d 538.) Finally, the court reasoned, "common sense dictates that it makes no difference whether a victim is clothed as long as penetration occurs. We believe that 'the legislature did not intend "that a piece of clothing as flimsy as a pair of shorts or even a girl's panties" would insulate a defendant from punishment for performing' sodomy on a child." ( Ibid . )
For this final point, the court in Ribera relied on State v. Pearson (Iowa 1994) 514 N.W.2d 452, which concluded that skin-to-skin contact was not necessary to establish a " 'sex act' " under Iowa Code section 702.17,[8] and that "prohibited contact may occur even though the specific body parts ... are covered." ( Pearson , at p. 455.) The court went on: "Whether intervening material prevents contact must be determined on a case-by-case basis, considering the nature and amount of the intervening material. If the intervening material would, from an objective viewpoint, prevent a perception by the participants that the body parts ... have touched, contact has not occurred." ( Ibid . )
This result is consistent with California law concluding contact through clothing constitutes sexual contact for purposes of another statutory scheme. In People v. Whitlock (2003) 113 Cal.App.4th 456, 6 Cal.Rptr.3d 389, the court considered whether a defendant's act in touching a child's genitals over her clothing met the Sexually Violent Predators Act ( Welf. & Inst. Code, § 6600 et seq. ) definition of substantial sexual contact, which included masturbation of either the victim or the offender. ( Whitlock , at pp. 459-460, 462-464 & fn. 3, 6 Cal.Rptr.3d 389.) The court noted that the common definition of masturbation " 'encompasse[d] any touching or contact, however slight, of the genitals of either the victim or the offender, with the requisite intent.' " ( Id. at p. 462, 6 Cal.Rptr.3d 389.) The court concluded the question was not "the amount of the contact but rather whether genital contact was made. [Citation.] Whether the genital touching occurs over clothing is not determinative. Masturbation as it is ... commonly understood can occur under clothing and over clothing." ( Id . at p. 463, 6 Cal.Rptr.3d 389 ; accord, People v. Carlin (2007) 150 Cal.App.4th 322, 333, 58 Cal.Rptr.3d 495.)
*218 In light of these authorities, we conclude the trial court properly treated the question of whether contact through clothing constituted oral copulation as one of fact for the jury. As the court noted, clothing may consist of something as flimsy as nylon pantyhose or underwear, or as substantial as bomb disposal clothing. Whether the clothing prevented "contact" may *785 properly be considered on a case-by-case basis.[9]
III. DISPOSITION
The judgment is affirmed.
We concur:
Streeter, Acting P.J.
Reardon, J.

Judge of the Superior Court of California, City and County of San Francisco, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Minor was shown a drawing of a child and asked to circle the area defendant touched; she circled the front genital area.

Shown a drawing of a male, Minor circled the genitals to indicate the part of defendant's body that touched her, and she said she preferred to call it the "private."

She also stated he sometimes would touch her chest area and "squeeze it."

It appears the abuse began a couple of months before Christmas 2013 and continued until Minor reported it in early February 2014. Minor turned 11 in January 2014.

The interview was conducted in a combination of English and Spanish, defendant's native language.

See footnote *, ante .

Defense counsel did not object to the court's response to the jury's question. Having failed to do so, defendant waived the issue. (See People v. Rodrigues (1994) 8 Cal.4th 1060, 1193, 36 Cal.Rptr.2d 235, 885 P.2d 1 ; People v. Bohana (2000) 84 Cal.App.4th 360, 373, 100 Cal.Rptr.2d 845.) Moreover, it is clear from the record that the trial court carefully considered the jury's question and, having solicited counsel's input and conducted its own research without finding any clear answer to its question, properly exercised its discretion by referring the jury back to the approved instructions. (See People v. Beardslee (1991) 53 Cal.3d 68, 97, 279 Cal.Rptr. 276, 806 P.2d 1311 ["Where the original instructions are themselves full and complete, the court has discretion under section 1138 to determine what additional explanations are sufficient to satisfy the jury's request for information."]; People v. Moore (1996) 44 Cal.App.4th 1323, 1331, 52 Cal.Rptr.2d 256 ["By advising the jury to reread the cohabitation instruction, which was full and complete for purposes of the facts before it, the trial court fulfilled its duty under section 1138."].) We nevertheless address defendant's claim on its merits.

Iowa Code section 702.17 provides that a number of activities constitute sex acts, among them "[c]ontact between the mouth and genitalia."

Defendant does not contend that the evidence is insufficient to support two convictions of oral copulation.