Filed 7/31/14  P. v. Murphy CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>RALPH P. MURPHY,<br><br>        Defendant and Appellant. | A137906<br><br>(Napa County Super. Ct.<br>No. CR20399) |

Defendant Ralph P. Murphy was found after a jury trial to be a sexually violent predator (SVP) and was civilly committed for an indeterminate term, as required by the Sexually Violent Predator Act, Welf. & Inst. Code, § 6600 et seq. (SVPA).  Defendant challenges his commitment on a variety of grounds, including instructional error, lack of evidentiary support, due process, and equal protection.  We affirm.

## BACKGROUND

On August 1, 2011, the District Attorney of Napa County filed a petition for defendant's commitment as an SVP.  He had been convicted in 1987 of the molestation of three young girls and in 1994 of the molestation of another girl, all under the age of eight.

Prior to trial on the petition, defense counsel filed a motion in limine to allow the jury to "consider the consequences of [a] true finding."  Although the court granted the motion, it changed the language of what was apparently a requested jury instruction from

1

"confined indefinitely" to "confined in a locked facility for treatment."[1] At the next pretrial conference, defense counsel told the court, "I would prefer no discussion of consequences to the compromise we arrived at" and withdrew the request. Instead, counsel asked for the jury to be instructed with CALCRIM No. 3454, which requires the jury to find, "It's necessary to keep [the defendant] in custody in a secure facility to ensure the health and safety of others."

At trial, two expert witnesses concluded that defendant met the criteria for an SVP. Dr. Dawn Starr gave defendant a diagnosis of pedophilia and borderline personality disorder. She also noted he suffered from depression and dysthymia disorder, although these were not necessarily related to his status as an SVP. Defendant had acknowledged to her that, despite being imprisoned for several years, he continued to have sexual thoughts about young girls, and she believed the difficulty he had connecting with others as a result of the personality disorder predisposed him to act on this sexual desire. Dr. Starr applied psychiatric "actuarial tools" to estimate defendant's risk of re-offending. Using two different tests, she concluded he had a likelihood of 16 percent after 5 years and 24 percent after 10 years. As she testified, this was an estimate of the likelihood defendant would be re-arrested, rather than commit further sexual assaults; the calculation of probabilities did not take into account unreported or undetected sexual assaults. On this basis, Dr. Starr believed defendant was likely to engage in sexually violent conduct, if released.

Dr. Garrett Essres also found that defendant fit the diagnostic criteria for pedophilia and borderline personality disorder. For reasons he explained at length, Dr. Essres reached a similar conclusion about defendant's likelihood of re-offending. In the course of his testimony, Dr. Essres remarked that SVP defendants sometimes prevaricate

---

[1] The motion in limine did not itself propose a jury instruction. Rather, it sought a ruling that evidence regarding the nature of an SVP commitment would be admitted. The record does not contain the full text of the jury instruction to which the court alluded on the record, which appears to have been formulated during chambers discussions that were not transcribed.

in talking with examining psychiatrists to avoid "an indeterminate sentence to a state hospital."

Soon after Dr. Essres made this comment, the jury submitted a question to the court, asking, "Is there a time when [defendant] would be re-evaluated for community treatment? What would be necessary for this to happen? Should we be concerned with this or is it irrelevant?" After extensive consultation with counsel and Dr. Essres, and with the express consent of defense counsel, the court responded, "An inmate can petition annually for review but few petitions are successful, or on rare occasions the Department of Mental Health may deem the person able to return to the community." Although court and counsel discussed referring to an "indeterminate commitment," that phrase was not included in the response.

An expert for the defense, Dr. John Podboy, disagreed with the two prosecution experts, testifying that he had ruled out diagnoses of borderline personality disorder and pedophilia, although he agreed defendant suffered from dysthymia, or mild, chronic depression. Dr. Podboy explained to the jury the controversial nature and weaknesses of the psychological instruments used by the prosecution experts to estimate the likelihood of future sexually violent conduct.

The jury found the petition to be true, and defendant was committed to the Department of Mental Health for an indeterminate term.

## DISCUSSION

"Under the SVPA, the state can civilly commit individuals found to be SVPs after they conclude their prison terms. [Citation.] Section 6600, subdivision (a)(1) defines the SVP as 'a person who has been convicted of a sexually violent offense against one or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior.' " (*Reilly v. Superior Court* (2013) 57 Cal.4th 641, 646.) "After a petition for commitment has been filed in the superior court, . . . '[t]he superior court first holds a hearing to determine whether there is "probable cause" to believe that the person named in the petition is likely to engage in sexually violent predatory criminal

3

behavior upon release. . . . [I]f the court finds probable cause within the meaning of this section, the court orders a trial to determine whether the person is an SVP under section 6600.' [Citation.] Though civil in nature, this trial contains a number of procedural safeguards commonly associated with criminal trials, including the alleged SVP's right to a jury trial [citation], to assistance of counsel (*ibid.*), and to a unanimous jury finding that he or she is an SVP beyond a reasonable doubt before he or she may be committed [citation]." (*Id*. at p. 648.)

## A. Indefinite Commitment Instruction

Defendant first contends he was entitled to "a complete instruction beyond what was given, informing the jury that a true finding would result in his indefinite commitment and the rigid parameters limiting any future judicial review of his confinement."[2]

We decline to address the merits of defendant's argument because the failure to give the instruction he seeks was rendered harmless "under any standard" by the trial court's response to the jury's question. (*People v. Cowan* (2010) 50 Cal.4th 401, 499.) In essence, defendant contends the jury was entitled to an instruction informing them that, once found to be an SVP, he faced an indefinite term and difficult procedural hurdles in ever gaining his release from confinement. The trial court's response to the jury's question provided just that information. While the court did not use the word "indefinite" and did not describe the precise procedural means for gaining release in detail, the court told the jury release was unlikely, since "few petitions are successful" and voluntary release by the state was "rare." Particularly following Dr. Essres's express reference to an "indeterminate sentence," this provided the jury with the information sought by defendant.

---

[2] Our analysis of this argument is hampered because defendant has not attempted to formulate the precise language of the instruction he contends the court had a sua sponte obligation to deliver, and there is no record of the instruction that defense trial counsel proposed, if in fact, any was proposed. As a result, we have only a general and imprecise description of the instruction for which defendant advocates.

4

Defendant argues that the court's response was "accurate but incomplete," giving a "false view" of the commitment system because it did not disclose that a true finding was "likely to amount to lifetime incarceration." On the contrary, the court's instruction conveyed the low likelihood more forcefully than the type of technical instruction now sought by defendant. In combination with Dr. Essres's disclosure of an indefinite commitment, the court told the jury that "few" petitions for release are successful and grants of release were "rare." The only conclusion to be drawn from this information is that it is difficult for a person found to be an SVP to gain release, which implies the probability of a long commitment. Given the jury's evident interest in the issue, Dr. Essres's reference to an indefinite term, and the court's instruction that relief from commitment is uncommon, there is no reason to believe the jury's judgment would have been different had an instruction been given that expressly referred to an indefinite term and described in more detail the procedural aspects of relief from commitment.

## B. Sufficiency of the Evidence

Under section 6600, subdivision (a)(1), the prosecution was required to prove beyond a reasonable doubt that defendant suffered from "a diagnosed mental disorder that makes [him] a danger to the health and safety of others in that it is likely that he . . . will engage in sexually violent criminal behavior." A "diagnosed mental disorder" is defined to include "a congenital or acquired condition affecting the emotional or volitional capacity that predisposes the person to the commission of criminal sexual acts in a degree constituting the person a menace to the health and safety of others." (§ 6600, subd. (c).)

Defendant appears to concede that the two mental disorders identified by Drs. Starr and Essres, pedophilia and borderline personality disorder, qualify as "mental disorders" for purposes of section 6600, subdivisions (a) and (c). He contends, however, that the evidence was insufficient to demonstrate that he suffered from those disorders because the two experts improperly applied the criteria for their diagnosis in the Diagnostic and Statistical Manual of Mental Disorders (DMS), the handbook used by mental health professionals to define and categorize mental disorders.

5

We apply the same evidentiary standard of review used in the review of criminal convictions. (*People v. Carlin* (2007) 150 Cal.App.4th 322, 333.) That is, we " ' " 'examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " ' " (*People v. Hajek and Vo* (2014) 58 Cal.4th 1144, 1182–1183.) Whether defendant suffers from a mental disorder is a matter for expert determination in the first instance. Two qualified expert witnesses agreed that defendant fit the criteria for these diagnoses and explained their reasoning, and defense counsel was able to cross-examine them about the DSM and the basis for their opinions. Defendant also introduced testimony by a similarly qualified expert who criticized these diagnoses. It was for the jury to resolve the conflicts in this evidence. (*People v. Mercer* (1999) 70 Cal.App.4th 463, 466–467.)

For purposes of appellate review, the opinions of the two experts that defendant suffered from a qualifying mental disorder as defined in the DSM, supported by the facts to which they testified, constituted substantial evidence of the fact of a disorder. (*Chavez v. Glock, Inc.* (2012) 207 Cal.App.4th 1283, 1309–1310, fn. 9 [properly supported expert opinion can constitute substantial evidence].) The standard of review does not permit us to substitute our independent reading of the requirements of the DSM for that of the experts, as defendant urges us to do.

### C. Availability of Effective Treatment

Defendant points out that if an SVP suffers from a mental disorder that is untreatable, he or she might be civilly confined for life. He contends such confinement works a denial of due process "[i]f the state has nothing to offer in the way of meaningful treatment" that provides the prospect of future release.

The United States Supreme Court has held that the state can, consistent with due process, confine "those who suffer from a volitional impairment rendering them dangerous beyond their control." (*Kansas v. Hendricks* (1997) 521 U.S. 346, 358 (*Hendricks*).) Our Supreme Court has followed that ruling and confirmed that the

6

provisions of the SVPA comply with its strictures. (*Hubbart v. Superior Court* (1999) 19 Cal.4th 1138, 1158.) In effect, these cases hold, society has the right to protect its members from the conduct of persons who are dangerous beyond their control through civil confinement. Neither *Hendricks* nor *Hubbart* premised its ruling on a defined term of civil confinement; uncontrollably dangerous persons can be confined for as long as they are dangerous. As *Hubbart* holds, the due process clause is not violated because the mental disorder leading to such dangerousness proves not to be amenable to treatment. (*Hubbart,* at p. 1167.)

Defendant relies almost exclusively on *People v. Feagley* (1975) 14 Cal.3d 338 (*Feagley*), to support his claim, but *Feagley* does not hold that indefinite confinement of untreatable SVP's violates due process. Rather, it holds that confinement of such persons for an indefinite period "in a prison setting" is unconstitutional. (*Id.* at pp. 342, 376.) One of the grounds for this holding was the court's conclusion that the state prison system in 1975 provided no realistic opportunity for the treatment of such persons. (*Id.* at pp. 342, 371.) As defendant acknowledges, the SVPA, which did not exist at the time of *Feagley*, *requires* that confined persons be provided treatment (§ 6606, subd. (a)), and SVP's are no longer confined within prisons. (See *Hubbart, supra,* 19 Cal.4th at pp. 1167–1168, fn. 29.)

The SVPA recognizes that SVP's will not necessarily suffer from disorders that can be effectively treated, noting that it is not necessary as a precondition for confinement for a person to have a mental disorder that is amenable to treatment. (§ 6606, subd. (b); see also *People v. Hurtado* (2002) 28 Cal.4th 1179, 1192 ["[a]lthough treatment is a secondary objective [citation], a defendant likely to commit future predatory acts can be committed even if his condition is not amenable to treatment"].) Contrary to defendant's claim, this does not conflict with the SVPA's requirement of treatment. It simply recognizes that while treatment is the goal, the right of society to

confine such persons is not dependent upon their amenability to treatment. (*Hubbart*, *supra,* 19 Cal.4th at p. 1167.)[3]

### D. Vagueness of "Likely" to Engage in Future Conduct

Defendant contends the definition of "likely" in the phrase, "likely [to] engage in sexually violent criminal behavior" is unconstitutionally vague because it does not provide a clear threshold for the risk of future violent conduct.

The definition provided by the trial court to the jury was formulated by our Supreme Court in *People v. Superior Court (Ghilotti)* (2002) 27 Cal.4th 888 (*Ghilotti*), after an extended discussion of some of the issues raised by defendant. (*Id.* at pp. 918– 923.) Defendant criticizes the conclusions reached in *Ghilotti*, but as a lower court we are not permitted the same liberty. We are bound, as was the trial court, to apply the definition of "likely" formulated by the Supreme Court in *Ghilotti*.

### E. Equal Protection and Ex Post Facto

Defendant contends the indefinite commitment provisions of the SPVA deny him equal protection and constitute an ex post facto law. As he acknowledges, the issues he raises were resolved against him in *People v. McKee* (2010) 47 Cal.4th 1172 (*McKee I*) and *People v. McKee* (2012) 207 Cal.App.4th 1325 (*McKee II*). While he argues *McKee II* was wrongly decided, we have reviewed its rationale and find no reason to differ with *McKee II*. We note that the Supreme Court, which remanded with specific directions for further proceedings in *McKee I* (at pp. 1210–1211), declined to review the subsequent decision in *McKee II*. (*People v. McKee* (Oct. 10, 2012, S204503).)

Defendant does raise an issue not discussed in *McKee I* and *McKee II*, comparing his circumstances for equal protection purposes to those of a prisoner sentenced to a life term and arguing the regularity of parole review and the personal attention provided by that system allow more opportunity for release to life term prisoners. We find the two situations sufficiently different as to preclude a finding they are "similarly situated."

---

[3] In connection with this argument, defendant has requested that we take judicial notice of a purported description of State sex offender treatment programs. In light of our resolution of the argument, we deny the request.

(*Cooley v. Superior Court* (2002) 29 Cal.4th 228, 253 [equal protection applies only to groups that are similarly situated for purposes of the challenged law].)  In any event, it is by no means clear that the right to parole, which adheres only after a considerable length of imprisonment, provides more opportunity for release and more personal attention than the options afforded SVP's, and there is no evidence in the record to support such an argument.

## DISPOSITION

The order of commitment is affirmed.


_____
Becton, J.*


We concur:


_____
Margulies, Acting P.J.


_____
Banke, J.


* Judge of the Contra Costa County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

9