Filed 5/24/22  P. v. Morris CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B312176 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 20HWMH01364) |
| v. | |
| SAMMY LEE MORRIS, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Mark E. Windham, Judge.  Affirmed.

Gerald J. Miller, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle and Rene Judkiewicz, Deputy Attorneys General, for Plaintiff and Respondent.

———————————

Sammy Lee Morris appeals from a commitment order classifying him as a sexually violent predator and committing him to the State Department of State Hospitals (SDSH), under the Sexually Violent Predator Act (Act) (Welf. & Inst. Code[1] § 6600 et seq.), for an indeterminate term.  On appeal, Morris argues that his commitment cannot stand because there was insufficient evidence that he suffered from a severe mental disorder that predisposed him to commit sexual crimes.  We affirm.

## BACKGROUND

### I.     The Act

The Act "allows for the involuntary commitment of certain convicted sex offenders, whose diagnosed mental disorders make them likely to reoffend if released at the end of their prison terms." (*Cooley v. Superior Court* (2002) 29 Cal.4th 228, 235.)  A sexually violent predator (SVP) is "a person who has been convicted of a sexually violent offense against one or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." (§ 6600, subd. (a)(1).)  The " 'mental disorder' " prong of the Act "requires a diagnosed mental disorder *affecting the person's emotional or volitional capacity* that predisposes the person to commit sex crimes in a menacing degree," and "implies 'serious difficulty' in controlling behavior." (*People v. Williams* (2003) 31 Cal.4th 757, 776 (*Williams*).)  A person who is declared an SVP is committed to the SDSH for treatment.  (§ 6604.)  The Act

---

[1] All further undesignated statutory references are to the Welfare and Institutions Code.

2

is "not punitive in purpose or effect," and a commitment proceeding under the Act is a " 'special proceeding of a civil nature.' " (*People v. Yartz* (2005) 37 Cal.4th 529, 535, 536.) To support a person's commitment under the Act, the People must prove beyond a reasonable doubt that the person is an SVP. (§ 6604; *Cooley*, at p. 246.)

## II. Morris's underlying criminal and sexual offenses

Between 1983 and 1985, Morris was convicted of six counts of rape in connection with several burglaries and robberies.[2]

The first incident took place in January 1983. A husband and wife drove into the garage attached to their condominium and were approached by Morris and his codefendant, who were both armed with handguns. Morris's codefendant ordered the husband to lie face down on the floor and tied his feet and hands and covered his head. Morris ordered the wife to lie face down and tied her hands and feet, placed a gag in her mouth, tied it around her head, and covered her head with a towel. Morris and his codefendant took turns ransacking the residence. They then took the wife to the living room. Morris's codefendant raped the victim first, then Morris raped her. During the rape, Morris made such comments as, "Isn't this better than your husband. . . . Isn't this great. . . . Do you want me to come back?"

In March 1983, Morris and his codefendant, who were both armed, entered an apartment while a party was taking place. There were three men and two women in the apartment. Morris and his codefendant yelled at the five people to get down,

---

[2] Morris does not contest whether his offenses constituted sexually violent offenses within the meaning of section 6600, subdivision (b).

3

threatened them, and one of the defendants struck the party host multiple times with a handgun. Morris and his codefendant bound all five people's hands and feet and carried the three men to a bedroom. Two of the men were handcuffed. They ransacked and burglarized the apartment and each raped one woman.

According to the victim Morris raped, he threw her to the floor, her hands were tied behind her back, paper towels were stuffed in her mouth, and a gag was tied around her mouth and head. During the rape, Morris asked, "Am I hurting you? Are you married or single? Are you a virgin? It doesn't seem like you've been with that many guys." He returned to rape this victim a second time and told her, "Just play like I'm your man."

The third incident took place in April 1983. A man and woman were preparing to leave their apartment when Morris and his codefendant pushed the front door open with their guns pointed at the couple. They handcuffed the couple and covered their heads before proceeding to ransack the apartment. Morris and his codefendant then dragged the man to one bedroom and the woman to another. The woman felt a gun by her ribs and was told, "Don't scream or you'll get hurt." Morris raped her twice. Before leaving, Morris threatened to return and kill her if she moved after their departure.

## III. Morris's prison rules violations

From 1990 through 2019, Morris received more than 20 prison rules violation reports for sexual misconduct, the majority of which were for indecent exposure and masturbation. Many of the reports describe Morris staring at prison staff while he masturbated, and at least one citation stated that Morris smiled after noticing that he had been observed masturbating and that he continued to masturbate. Morris also received a

4

rules violation citation for handing a note to a prison staff member stating, "he feels amorous when he sees [her]," that he wanted her to "enjoy it," and that he knew they could "make something together."

## IV. The SVP proceedings

On September 3, 2020, the Los Angeles District Attorney filed a petition seeking to commit Morris as an SVP. On September 25, 2020, the trial court found that probable cause existed to believe that Morris was an SVP and a trial was ordered.

After Morris waived a trial by jury, a bench trial was held in April 2021. Dr. Steven Jenkins, Dr. Alette Coble-Temple, and Dr. Michelle Vorwerk testified for the People. Dr. Douglas Korpi and Dr. Brian Abbott testified for Morris. With the exception of Dr. Abbott, each of the expert witnesses is an SVP evaluator for the SDSH.

### A. *The People's expert testimony*

#### 1. Dr. Jenkins

Dr. Jenkins is a forensic psychologist who has performed approximately 390 sexually violent predator evaluations for the SDSH since 2007, first as a contractor and then as an employee. His overall rate of positive SVP findings is around 15 percent. Dr. Jenkins reviewed records he received from the Department of Corrections and Rehabilitation and spoke with Morris for approximately two hours.

Dr. Jenkins diagnosed Morris with other specified paraphilia disorder (OSPD) coercive type, exhibitionistic disorder,

and antisocial personality disorder (ASPD).[3] The characteristics of OSPD coercive type that applied to Morris were "evidence of a recurrent pattern of intense sexual urges, interest, fantasies, or behavior involving coercive sex . . . with nonconsenting persons" with a negative impact on the individual or victim. Although a diagnosis of a paraphilic disorder generally requires that a defendant's behaviors take place over a six-month period, Dr. Jenkins found that the rapes constituted a recurrent pattern of behavior sufficient for the diagnosis. Dr. Jenkins also cited Morris's persistence in the rapes despite the victims' distress, as well as the demeaning, humiliating, and taunting comments made by Morris during the rapes. Although the rapes were committed in 1983, Dr. Jenkins testified that Morris continues to suffer from OSPD coercive type and that he expressed his OSPD through indecent exposure while in the prison environment.

Dr. Jenkins relied on the rules violation reports in diagnosing Morris with exhibitionism, which requires a pattern of intense sexual urges, fantasies, or behavior of exposing one's genitals to unsuspecting people over a six-month period of time. Dr. Jenkins also concluded that Morris met all the criteria for ASPD, which refers to a pattern of behavior starting in childhood or adolescence that involves a disregard for the rights and welfare of other people.

Dr. Jenkins also testified concerning the interplay between Morris's diagnoses. He stated that "exhibitionism is highly correlated with [ASPD]" and that there was "evidence for both

---

[3] Dr. Jenkins also diagnosed Morris with alcohol use disorder and adjustment disorder with depressed and anxiety features, though he testified that neither of these diagnoses was relevant to his SVP analysis.

the exhibitionism and an antisocial motivation that may fuel or aggravate it." Further, Morris's OSPD coercive type "is also aggravated by the [ASPD]," and that they "work together" and are "not neatly separated." Dr. Jenkins also testified that Morris's diagnoses impair both his ability to control his behavior and his emotional capacity. He found that the rapes and the indecent exposure incidents reflected impaired volitional capacity because Morris "knew what he was doing was wrong; yet he continued acting on his sexual urges." Morris had also "never expressed any regard for the victims' welfare," and was callous, threatening, and violent towards his rape victims, demonstrating limited emotional capacity.

Dr. Jenkins applied the Static-99R, an actuarial assessment of sexual offense risk that identifies risk factors that have been found to be significantly associated with sexual recidivism. He obtained a score of five for Morris, which indicated that Morris was in the above-average risk category for sexual reoffense, with a higher score than 89 percent of other sex offenders evaluated. Dr. Jenkins also applied the Static-2002R, another actuarial instrument. This instrument indicated that Morris was in the average risk category.

Dr. Jenkins administered two instruments that analyze dynamic risk factors, the Structured Risk Assessment Forensic Version and Stable-2007. With both instruments, Dr. Jenkins found that a high level of risk factors was present, indicating that Morris's risk of reoffending was greater than the actuarial assessments indicated. Dr. Jenkins also administered the Psychopathy Checklist Revised (PCLR) and found a number of psychopathic traits to be present, including a factor associated

with a deviant lifestyle marked by impulsivity and general criminality, which informed Morris's overall sexual offense risk.

Dr. Jenkins concluded that if Morris were to engage in sexually violent behavior in the future, it would be predatory in nature. Dr. Jenkins did not believe that any protective factors were present to reduce Morris's risk of reoffending. Dr. Jenkins opined that Morris could not be safely and effectively treated in the community because Morris did not believe he needed treatment and had no intention of entering into it voluntarily.

### 2.     Dr. Coble-Temple

Dr. Coble-Temple, a clinical psychologist and consulting psychologist for the SDSH, also evaluated Morris. She was unable to speak with Morris as part of her evaluation due to staff shortages related to Covid-19 at the prison in which Morris was held and thus completed her evaluation by reviewing Morris's police reports, prison reports, and medical and mental health records. Dr. Coble-Temple diagnosed Morris with OSPD coercive type, nonconsenting female; exhibitionistic disorder; and ASPD. Dr. Coble-Temple based her diagnosis of OSPD coercive type on the fact that Morris raped certain victims more than once despite their struggles and protest, verbally taunted some of the victims, and raped nonconsenting victims even though the record indicated that he had access to a consensual sexual partner at the time. Her diagnosis of exhibitionistic disorder relied on Morris's rules violations for indecent exposure while in prison. Finally, Dr. Coble-Temple's diagnosis of ASPD was based on Morris's gang involvement and violent behavior during his youth, the rapes and burglaries committed in 1983, and the incidents of indecent exposure while Morris was in prison, all of which she found demonstrated aggressive and violent behavior with a

8

reckless disregard for others. Dr. Coble-Temple opined that Morris currently suffers from all three of the diagnosed disorders. She also testified that these mental disorders cause volitional and emotional impairment because Morris "engaged in coercive sexual acts repeatedly and continued to engage in exhibitionist acts . . . despite detection," and "engages in these acts despite causing harm to others."

Dr. Coble-Temple opined that Morris was likely to engage in sexually violent behavior in a predatory manner if he were released from custody. She stated that "it is a constellation of those diagnoses that make him a continued risk." Dr. Coble-Temple utilized the Static-99R and Stable-2007. With respect to the Static-99R, Dr. Coble-Temple's score for Morris was a four, which indicated that Morris has a 1.9 times greater risk of recidivism compared to the average. Using the Stable-2007, Dr. Coble-Temple found that multiple risk factors were present, including hostility towards women, impulsivity, poor problem-solving skills, negative emotionality, and cooperation with supervision. Dr. Coble-Temple concluded that there were no protective factors present that would reduce Morris's risk of reoffending.

### 3. Dr. Vorwerk

Dr. Vorwerk, a forensic psychologist and contractor with the SDSH, also evaluated Morris. Dr. Vorwerk has completed approximately 130 SVP evaluations and has opined that the SVP criteria were met in around 20 percent of cases within the last three years. She was also unable to interview Morris due to staff shortages related to Covid-19 at Morris's prison, but spoke with Morris's treating clinician and reviewed Morris's legal and prison records. Dr. Vorwerk diagnosed Morris with exhibitionistic

disorder, ASPD, and alcohol use disorder.[4]  Dr. Vorwerk based her diagnosis of exhibitionistic disorder on the prison reports of indecent exposure over a period of more than six months. Dr. Vorwerk diagnosed Morris with ASPD based on his long history of disregarding and violating the rights of others, including through gang involvement and violence in his adolescence and the sexual violence and batteries committed in adulthood.  She also cited his lack of remorse and refusal to accept responsibility for his sexual offenses.  Dr. Vorwerk also administered the PCLR and determined that Morris shows a high level of psychopathy.  Dr. Vorwerk opined that the combination of Morris's ASPD and exhibitionism is "dangerous" and results in a limited ability to control sexual behaviors.  Dr. Vorwerk also testified that her diagnosis of alcohol use disorder impacted her ultimate opinion as to whether Morris meets the SVP criteria, as Morris's use of alcohol was present during his crimes in 1983 and it was reported that he was drunk during one of the indecent exposure incidents.  Because of his diagnoses, Dr. Vorwerk found that Morris lacks "the empathy, the impulse control, [and] disinhibition to stop those sexual behaviors."  Morris's "exhibitionistic disorder is evidence of sexual preoccupation," while his ASPD "allows him to offend against others without regard to their rights," creating "a dangerous combination."

Dr. Vorwerk assessed Morris's risk of reoffending by applying the Static-99R and Stable-2007 and by examining possible protective factors.  Dr. Vorwerk obtained a score of four

---

[4] Dr. Vorwerk also diagnosed Morris with cannabis use disorder and other specified depressive disorder, but opined that neither of these diagnoses impacted her ultimate view of whether Morris met the SVP criteria.

for Morris under the Static-99R, which reflects above average risk of sexual reoffense.  Under the Stable-2007, Dr. Vorwerk determined that 19 out of 24 risk factors were present, yielding a score higher than 98.2 percent of the individuals given the assessment and placing Morris in the high risk category.  Dr. Vorwerk opined that there is a 26.8 percent recidivism rate within five years for individuals with the same Static-99R and Stable-2007 scores as Morris.  Dr. Vorwerk concluded that Morris meets the SVP criteria and that any future offenses would likely be predatory.  Dr. Vorwerk did not believe that Morris would voluntarily pursue treatment if released into the community, as he denied responsibility for both the rapes and indecent exposure.

### B.    *The defense's expert testimony*

#### 1.    **Dr. Korpi**

Dr. Korpi is a licensed psychologist who has completed approximately 1,400 SVP evaluations for the state of California.  Dr. Korpi spoke with Morris via telephone and reviewed police reports, prison records, and mental health reports.  Dr. Korpi diagnosed Morris with OSPD with coercive and exhibitionist traits and ASPD.  He based the OSPD with coercive and exhibitionist traits diagnosis on the rapes committed by Morris in 1983 and the prison rules violations for indecent exposure.  Dr. Korpi stated that he did not diagnose Morris with OSPD coercive type, and Morris's rapes were committed in the context of Morris ransacking houses, where they were "but one note in a greater symphony of violence."[5]  Dr. Korpi did not diagnose

---

[5] Dr. Korpi also testified that OSPD coercive type did not apply to Morris because Morris was only a teenager when he committed the 1983 rapes and had only been arrested once.

11

Morris with exhibitionistic disorder because Morris had no record of exhibitionist behavior while in the community. Dr. Korpi's diagnosis of ASPD relied on Morris's criminal behavior, beginning from an early age.

Dr. Korpi concluded that Morris had mental disorders that predispose him to criminal sexual acts, but that Morris is not likely to engage in sexually violent predatory criminal behavior as a result of his mental disorders. Applying the Static-99R, Dr. Korpi obtained a score of four for Morris, indicating that Morris is at above average risk of reoffending. Dr. Korpi obtained a score of three for Morris under the Static-2002R, which placed Morris at an average risk of reoffending. With respect to dynamic risks, Dr. Korpi found that Morris may have issues with general self-regulation and impulsivity in light of the prison reports for indecent exposure, may be hostile, and has poor cognition. Dr. Korpi concluded that while Morris is probably going to reoffend, he is no longer violent.

### 2. Dr. Abbott

Dr. Abbott is a licensed psychologist who performs SVP evaluations in nine states and has performed approximately 400 to 450 evaluations in California. In his evaluations in California,

---

When it was pointed out to Dr. Korpi that Morris was 26 years old when the rapes took place, Dr. Korpi testified that "puts him more in the paraphilia coercive realm." However, Dr. Korpi testified that this did not change his diagnosis. Similarly, when informed on cross examination that his testimony that Morris had only been arrested once contradicted his report, which referenced two arrests, Dr. Korpi testified that he had misspoken, but the real issue was whether Morris raped again after first getting into trouble. Morris's second arrest was in connection with rapes committed prior to his first arrest.

Dr. Abbott has concluded that SVP criteria are not met in 95 percent of cases. Dr. Abbott spoke with Morris via video call for two hours and reviewed law enforcement, medical, mental health, and administrative records and the reports of the People's experts. Dr. Abbott diagnosed Morris with OSPD, adult antisocial behavior. He could not establish that Morris had displayed symptoms of ASPD before the age of 15, which is necessary for that diagnosis. However, he opined that Morris's behavior as an adult was consistent with suffering from ASPD. Dr. Abbott believed that the diagnosis of OSPD, adult antisocial behavior had resulted in a "generalized pattern of antisociality," but did not predispose Morris to sexually violent behavior.

Dr. Abbott nevertheless performed a risk assessment for Morris using the Static-99R. Dr. Abbott assigned Morris a score of four. Dr. Abbott testified that the Static-99R results in some degree of overestimation of risk because the studies on which it is based looked at any type of sexual recidivism, rather than sexually violent predatory acts. Dr. Abbott did not consider dynamic risk factors. Dr. Abbott concluded that Morris is not a serious and well-founded risk to reoffend in a sexually violent predatory manner.

Dr. Abbott also testified concerning the diagnoses made by the People's experts. He opined that OSPD, non-consent is not a valid diagnosis based on current research. He believed the rapes were best explained by Morris's antisocial behavior disorder. He also did not believe that exhibitionistic disorder applied to Morris, as Morris had not displayed exhibitionistic behavior in the community. Dr. Abbott opined that Morris's antisocial personality pathology also motivated his indecent exposure in prison.

13

**C.** *The trial court's SVP finding and commitment order*

After hearing testimony from Morris's sister concerning his family's ability to offer him a home and support if he were to be released into the community, as well as argument from counsel, the trial court issued its finding and commitment order. The court held that the People had proven beyond a reasonable doubt that: (1) Morris had been convicted of a sexually violent offense; (2) Morris has ASPD and OSPD with features of non-consent and exhibitionism, and thus has a diagnosed mental disorder as required by the Act; (3) as a result of his mental disorder, Morris poses a danger to the health and safety of others because it is likely that he will engage in sexually violent predatory criminal behavior; and (4) it was necessary to keep Morris in custody to ensure the health and safety of others.

With respect to Morris's diagnosis with a mental disorder, the trial court found aspects of the testimony of Dr. Korpi to be particularly persuasive and found the testimony of Dr. Jenkins, Dr. Coble-Temple, and Dr. Vorwerk to be persuasive. The trial court found Dr. Abbott's testimony on this issue to be without credibility. The trial court also rejected Dr. Korpi's and Dr. Abbott's testimony concerning risk.

The trial court declared Morris an SVP and committed him to the SDSH for an indeterminate term. Morris timely appealed.

## DISCUSSION

Morris contends that the People failed to establish beyond a reasonable doubt that he suffered from a severe mental disorder that predisposed him to commit criminal sexual acts, and that the trial court's SVP commitment order must therefore be reversed. Morris asserts that the sexual offenses he committed in

14

the past were crimes of opportunity, incidental to robbery and burglary, and, accordingly, his diagnoses with ASPD and other mental disorders predisposed him to general criminality rather than criminally violent sexual acts.  Contrary to Morris's contentions, the testimony of the People's experts, together with evidence of Morris's qualifying offenses in 1983 and prison rules violations, provide substantial evidence to support the trial court's findings.

## I.    Standard of review

"In reviewing the evidence sufficient to support a commitment under section 6600, 'courts apply the same test as for reviewing the sufficiency of the evidence to support a criminal conviction.' [Citation.] 'Thus, this court must review the entire record in the light most favorable to the judgment to determine whether substantial evidence supports the determination below. [Citation.]  To be substantial, the evidence must be " 'of ponderable legal significance . . .  reasonable in nature, credible and of solid value.' " ' " (*People v. Carlin* (2007) 150 Cal.App.4th 322, 333.)

Further, " 'it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends. [Citation.]  Thus, if the verdict is supported by substantial evidence, we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder.' [Citation.]  This is true even in the context of expert witness testimony." (*People v. Poulsom* (2013)

15

213 Cal.App.4th 501, 518; accord, *People v. Sumahit* (2005) 128 Cal.App.4th 347, 352.)[6]

## II. Substantial evidence supports the trial court's determination that Morris has mental disorders predisposing him to criminally violent sexual acts

As previously noted, the " 'mental disorder' " prong of the Act "requires a diagnosed mental disorder *affecting the person's emotional or volitional* capacity that predisposes the person to commit sex crimes in a menacing degree," and "implies 'serious difficulty' in controlling behavior." (*Williams*, *supra*, 31 Cal.4th at p. 776.) Substantial evidence supports the trial court's conclusion that these requirements were satisfied here.

All of the expert witnesses diagnosed Morris with ASPD or a related antisocial personality disorder, and four of the experts also diagnosed Morris with paraphilic disorders, such as exhibitionism and OSPD coercive type, or the similar diagnosis of OSPD with coercive and exhibitionist traits. Expert testimony also explained the interaction between Morris's various diagnoses. Dr. Jenkins testified that "exhibitionism is highly correlated with [ASPD]" and that he found "evidence for both the exhibitionism and an antisocial motivation that may fuel or aggravate it." He similarly opined that Morris's OSPD coercive type is "also aggravated by the [ASPD]," and that they "work together" and are "not neatly separated."

Expert testimony also supports that the disorders with which Morris has been diagnosed impair his emotional and volitional capacity. For example, Dr. Jenkins testified that the

---

[6] We reject Morris's assertion that we are required to substitute our judgment for that of the trial court.

16

three rapes and the indecent exposure incidents in prison, on which his diagnoses were based, indicated impaired volitional capacity, as Morris "knew what he was doing was wrong; yet he continued acting on his sexual urges." Dr. Jenkins further testified that Morris's emotional capacity is limited because Morris has "never expressed any regard for the victims' welfare[ ]," and, with respect to his rape victims, was callous, threatening, and violent. Dr. Vorwerk testified that, as a result of his diagnoses, Morris lacks "the empathy, the impulse control, [and] disinhibition to stop those sexual behaviors."

Expert testimony also supports the contention that Morris is predisposed to commit sex crimes in a menacing degree. (*Williams*, *supra*, 31 Cal.4th at p. 776; § 6600, subd. (c).) When asked whether Morris's ASPD, OSPD coercive type, or exhibitionism make it likely that he will engage in sexually violent criminal behavior, Dr. Coble-Temple testified that "it is a constellation of those diagnoses that make him a continued risk." Dr. Vorwerk testified that Morris's "exhibitionistic disorder is evidence of sexual preoccupation," while his ASPD "allows him to offend against others without regard to their rights," creating "a dangerous combination." Moreover, all three of the prosecution experts opined that Morris was in the above-average range of risk for reoffending based on their use of actuarial tools and analyses of dynamic risks. Accordingly, each concluded that any future offense would be predatory in nature.

Morris's assertion that the People's experts "assumed that the predisposition element was met, and did not even consider whether appellant was specifically predisposed to commit criminal sexual violence" is therefore without merit. (Underscore omitted.)

17

We are also not persuaded by Morris's contention that, because his past sex offenses were purported "crimes of opportunity," his mental disorders do not predispose him to sexually violent crime. His claim that the manner in which the qualifying offenses came about is determinative of the mental disorder prong of the Act is unfounded in the law. "Conviction of a qualifying sexually violent offense may support a determination that a person is an SVP, but it cannot be the sole basis for that determination." (*People v. Roa* (2017) 11 Cal.App.5th 428, 444.) The "verdict cannot be based on prior crimes absent evidence of a '*currently* diagnosed mental disorder that *makes* the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior.' " (*Hubbart v. Superior Court* (1999) 19 Cal.4th 1138, 1162.) Thus, expert testimony is " 'critical' " to establish the mental disorder prong. (*People v. Burroughs* (2016) 6 Cal.App.5th 378, 402.) Contrary to these settled principles, Morris relies on his interpretation of what the qualifying offenses committed in 1983 reveal about his mental state, rather than on the testimony of any expert as to his *current* mental state.

Morris confuses our task in a substantial evidence review. (See *People v. Poulsom*, *supra*, 213 Cal.App.4th at p. 526.) The test is "whether there is substantial evidence in favor of the [trier of fact's] finding. . . . [Citation.] Thus, we are not concerned with the contrary evidence or the inferences that [defendant] urges should have been drawn from that evidence." (*Id.* at pp. 526–527.) Moreover, the inferences that Morris would have us draw are contradicted not only by the testimony of the People's experts, but that of his own expert witness, Dr. Korpi, which the trial court found compelling on this issue. Although Dr. Korpi opined

18

that the rapes were "but one note in a greater symphony of violence" committed during the ransacking of homes, he nevertheless concluded that Morris had mental disorders that predispose him to criminal sexual acts. Dr. Abbott's contrary testimony that Morris's adult antisocial behavior had resulted in a "generalized pattern of antisociality" and did not dispose Morris to sexually violent behavior was found not to be credible by the trial court. We "are not free to reweigh or reinterpret the evidence." (*People v. Mercer* (1999) 70 Cal.App.4th 463, 466–467.)

The cases on which Morris relies do not compel a different conclusion. In *Williams*, *supra*, 31 Cal.4th 757, the Supreme Court summarized an expert witness's testimony diagnosing the defendant with paraphilia, not otherwise specified, and noted in a footnote that the expert had "distinguished a rape committed as a crime of opportunity, as where a burglar enters a home to steal property, but by happenstance encounters a victim and takes advantage of the circumstance to commit a sexual assault." (*Id.* at p. 761, fn. 2.) The trial court made no further mention of this testimony in holding that no separate instruction concerning a determination of serious difficulty in controlling one's criminal sexual violence was constitutionally required and that no error arose from the court's failure to give such an instruction in that case. (See *id.* at pp. 777–778.)

In *In re Howard N.* (2005) 35 Cal.4th 117, the Supreme Court found that, in the absence of a jury instruction addressing the need for the People to demonstrate defendant's serious difficulty in controlling his dangerous behavior, the jury had not made such a finding. (*Id.* at p. 137.) The facts in *Howard N.* were distinguishable in several respects from the facts in *Williams*. For example, the jury had heard "no testimony that

19

defendant's mental abnormality caused him serious difficulty controlling his sexually deviant behavior" and "defendant's committing offense, unlike those in *Williams*, was one of opportunity; his mother was babysitting the sleeping victim." (*Howard N.*, at p. 138.) While the trial court indicated that a crime of opportunity may weigh against a finding that the defendant lacks control in controlling dangerous behavior, this was only one of several factors that the court relied upon in concluding that the evidence was not such that no reasonable juror could have failed to find that the defendant had a mental disorder that made it seriously difficult for him to control his violent impulses. (*Ibid.*)

Unlike *In re Howard N.*, this is not an appeal from a jury trial in which it was unclear whether the jury had made a determination with respect to the defendant's difficulty controlling his dangerous behavior. The trial court here heard testimony from multiple expert witnesses concerning Morris's limited ability to control his behavior and expressly stated in its verdict that Morris's inability to control his behavior was an "important consideration" in its determination that the People had carried their burden with respect to the mental disorder prong of the Act. Thus, while it is not clear to this court that the rapes committed by Morris were mere crimes of opportunity, as Morris urges,[7] we need not resolve that question in order to uphold the order.

---

[7] There is evidence in the record indicating that the rapes were planned. For example, Dr. Korpi testified that the fact that Morris brought a gun and handcuffs to the scene of one of his crimes "heavily suggests the possibility of a planning for rape."

Drawing all reasonable inferences in favor of the order, we are satisfied that substantial evidence supports the trial court's finding.

## DISPOSITION

The order is affirmed.

NOT TO BE PUBLISHED.


KIM, J.*


We concur:


LAVIN, Acting P. J.


EGERTON, J.


---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.