Filed 7/15/24  P. v. Mendez CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ALFREDO ARCILIO MENDEZ,<br><br>    Defendant and Appellant. | 2d Crim. No. B330249<br>(Super. Ct. No. 15PT-00304)<br>(San Luis Obispo County) |

After a five-day bench trial, the court determined Alfredo Arcilio Mendez is a sexually violent predator (SVP) as described in Welfare & Institutions Code section 6600, subdivision (a)(1)[1] and committed him to the California Department of State Hospitals.  He appeals, arguing evidence was insufficient to

---

[1] Further undesignated statutory references are to the Welfare & Institutions Code.

demonstrate he is likely to reoffend by engaging in sexually violent criminal behavior.  We disagree and will affirm.

APPLICABLE LAW

California's Sexually Violent Predator Act (SVPA) permits committing convicted sex offenders who have served their prison terms to a state mental hospital if they are found to be sexually violent predators.  (§ 6604.)  A person is an SVP if (1) they have "been convicted of a sexually violent offense against one or more victims," (2) they have "a diagnosed mental disorder that makes [them] a danger to the health and safety of others" and (3) they are "likely" to "engage in sexually violent criminal behavior." (§ 6600, subd. (a)(1).)

A person is likely to engage in sexually violent criminal behavior if "because of [their] diagnosed mental disorder, [they] currently present[] a *substantial* danger—that is, *a serious and well-founded risk*—of criminal sexual violence . . . ."  (*People v. Superior Court (Ghilotti)* (2002) 27 Cal.4th 888, 895.)  Evidence of sexually violent behavior occurring while the offender is in custody is not required.  (§ 6600, subd. (d); *People v. McCloud* (2013) 213 Cal.App.4th 1076, 1090.)  Trial courts consider a person's prior convictions for sexually violent crimes ""'solely for evidentiary purposes" to help establish . . . current mental disorder and the likelihood of future violent sex crimes.'"  (*People v. Vasquez* (2001) 25 Cal.4th 1225, 1232.)

We review the trial court's SVP commitment order for substantial evidence.  (*People v. Carlin* (2007) 150 Cal.App.4th 322, 333.)  We "'review the entire record in the light most favorable to the judgment to determine whether substantial evidence supports the determination below.  [Citation.]  To be substantial, the evidence must be "'of ponderable legal

2

significance . . . reasonable in nature, credible and of solid value.”’”’” (*Ibid.*) Reversal for insufficiency of the evidence is warranted only if it appears that “‘upon no hypothesis whatever is there sufficient substantial evidence to support [the commitment].’” (*People v. Bolin* (1998) 18 Cal.4th 297, 331.) “It is not the role of this court to redetermine the credibility of experts or to reweigh the relative strength of their conclusions.” (*People v. Poe* (1999) 74 Cal.App.4th 826, 831.)

FACTUAL AND PROCEDURAL BACKGROUND

At trial, the parties stipulated that appellant molested three seven-year-old girls while he was in the Marine Corps and then served 2.5 years in the brig. They also stipulated he meets the first and second SVP criteria.

Appellant’s step-niece testified he molested her from the time she was five until she was ten. During interviews with experts, appellant admitted to touching his step-niece and her friend’s vagina. He also admitted he touched some neighborhood girls’ vaginas over their clothes, resulting in his arrest, conviction, and an 18-year prison sentence.

Forensic psychologist Dr. Mark Patterson testified for the People. Appellant told Patterson he committed multiple sexual offenses against young girls. He gave details and admitted he continued to molest even after he suffered criminal convictions and prison time. Dr. Patterson diagnosed appellant with pedophilic disorder and post-traumatic stress disorder. In addition to reviewing appellant’s prior conviction packets and interviewing him, Dr. Patterson utilized four risk assessment instruments to help determine appellant’s risk of sexual recidivism: the Static-99R, Static-2002R, Violence Risk Appraisal Guide-Revised (VRAG-R), and Structured Risk

3

Assessment-Forensic Version (SRA-FV).  He concluded appellant presents a serious, well-founded risk of engaging in criminal sexual predatory violence if released into the community.

Forensic psychologist Dr. Christopher Matosich also interviewed appellant, reviewed his prior conviction packet, and utilized the Static-99R and SRA-FV risk assessment tools.  He diagnosed appellant with pedophilic disorder and testified he presents a high risk of sexually reoffending.

Appellant called forensic psychologist Dr. Bruce Yanofsky to testify.  Dr. Yanofsky interviewed appellant, reviewed reports, consulted with individuals treating appellant, and scored him on the Static-99R, the SRA-FV, and Stable-2007 instruments, concluding appellant does not pose a serious and well-founded risk of reoffending.  Dr. Yanofsky opined this was in large part because of appellant's successful completion of the sex offender treatment program, but also because of his age and his plan to seek treatment if released.

Appellant also called clinical psychologist Dr. Craig King who explained that after evaluations in 2019 and 2021, he believed appellant was in substantial danger of sexually reoffending.  He testified he changed his opinion after evaluating appellant in 2022 because of appellant's average score on the Static-99R, his advanced age (over 60), and his completion of the sex offender treatment program.

Appellant's adult son testified that appellant sexually and physically abused him when he was three and four years old.  He had not seen appellant since he was four.  He testified their last contact was in 2022 when he called appellant because he was being "badgered" for contact.  He called to "set things straight a second or third time that [he] did not want any communication."

In ruling, the trial court found the People's witnesses, particularly the expert witnesses, more credible. The court found beyond a reasonable doubt that appellant is an SVP as described in section 6600, subdivision (a)(1). He was ordered committed to the California Department of State Hospitals for further treatment.

DISCUSSION

Appellant argues there was insufficient evidence he currently poses a risk of reoffending and that the People improperly relied primarily, if not solely, on evidence of his past crimes. We disagree.

Evidence of appellant's past sexual offenses is not irrelevant to his risk of reoffense. To the contrary, such evidence is highly probative of whether he is "likely to engage in sexually violent behavior if released." (*People v. Hubbart* (2001) 88 Cal.App.4th 1202, 1234.) Past sexually violent crimes show appellant targets similar victims to commit similar crimes, demonstrates the scope and nature of his sexually predatory behavior, and sheds light on the risk he poses if released. (*Ibid.*)

Moreover, the People's experts did not rely solely on appellant's past crimes. Dr. Patterson based his opinion on appellant's diagnosis, failure to learn from experience, lack of control, "entrenched problem" with volitional and emotional impairment, lack of remorse, and his denial and minimization of his sexual offense history. Dr. Patterson testified to his analysis of the Static-99R, Static-2002R, VRAG-R, and SRA-FV test results and how they informed his opinion. He testified appellant's belief he does not need treatment is concerning because his self-reported fantasies about children indicate an ongoing need for treatment. He believed appellant's release plan

5

was insufficient to mitigate his reoffense risk. He testified he had concerns about appellant's ability to self-manage his behavior and that appellant's expressions of regret were not genuine or sincere.

Dr. Matosich testified that most offenders will not reoffend after being punished, but appellant has repeatedly reoffended, demonstrating a severe disorder. He expressed concern that appellant had no formalized or comprehensive release plan. He testified appellant presents a considerable, heightened risk of sexually reoffending demonstrated by his history of failing to follow up with treatment, the severity of his ongoing and current pedophilic disorder, the nature of his impulsivity, history of substance abuse, and undiminished drive to obtain sexual gratification from children. Dr. Matosich discussed numerous instances of appellant acting on his sexual deviances, fantasies, and urges towards prepubescent children despite the consequences. He testified how the results of the Static-99R and SRA-FV tests informed his opinion that appellant presents a current, significant risk of reoffending.

Appellant contends the People's experts failed to adequately consider numerous risk mitigating factors, such as his advanced age (62), multiple infirmities, the results of his PPG[2] and polygraph examinations, his voluntary participation in and successful completion of sex offender treatment, and his claim he intends to continue treatment if released. But Drs. Patterson and Matosich both explained why these factors did not mitigate his risks.

---

[2] PPG is short for penile plethysmograph, a device measuring arousal on exposure to stimuli, in appellant's case deviant sexual stimuli.

The trial court found the People's experts more credible than appellant's experts especially since appellant's experts were unaware he had molested his son and persisted in efforts to contact him despite repeated requests he stop. The trial court found this spoke "volumes about what he will do outside of a controlled setting" and showed "an extraordinary lack of empathy and . . . insight that . . . makes him more dangerous." A trial court's evaluation of credibility "should be regarded as conclusive on appeal." (*People v. Hamlin* (2009) 170 Cal.App.4th 1412, 1463, italics omitted.)

Appellant urges us to reverse his commitment order, relying on *People v. Johnson* (2020) 55 Cal.App.5th 96 (*Johnson*), *People v. Cheatham* (2022) 82 Cal.App.5th 782 (*Cheatham*), and *People v. Jenkins* (2023) 95 Cal.App.5th 142 (*Jenkins*) in which appellate courts reversed Mentally Disordered Offender commitment orders after concluding the dangerousness finding was based solely on violence occurring decades earlier. (See *Johnson*, at p. 110 ["the *sole* evidence . . . support[ing] the dangerousness finding was appellant's violence from decades earlier . . ."]; *Cheatham*, at p. 791 [no evidence showed he was a danger to others because of his mental disorder]; *Jenkins*, at p. 145 [evidence failed to show dangerous behavior after her commitment offense or a relationship between her mental disorder and difficulty controlling dangerous behavior].)

Unlike those cases, and as we have explained, appellant's prior crimes were not the sole basis for the court's finding.

We have considered appellant's other contentions and do not find them persuasive. We conclude sufficient evidence supports the commitment order.

DISPOSITION

Judgment is affirmed.

NOT TO BE PUBLISHED.


                                        CODY, J.

We concur:


        GILBERT, P. J.


        BALTODANO, J.


8

Honorable Dodie A. Harman, Judge
Superior Court County of San Luis Obispo

_____

Gerald J. Miller, Esq., under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Noah P. Hill, Supervising Deputy Attorney General, and Eric J. Kohm, Deputy Attorney General, for Plaintiff and Respondent.